**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>WEINSTOCK & SCAVO, P.C.,<br><br>     Debtor. | Case No. 12-80220<br>Chapter 7<br>Judge Sacca |
| WILLIAM J. LAYNG, JR., as Chapter 7 Trustee<br>for WEINSTOCK & SCAVO, P.C.,<br><br>     Plaintiff,<br><br>v.<br><br>US BANK TRUST NATIONAL ASSOCIATION,<br>not in its individual capacity but solely as Owner<br>Trustee for VRMTG Asset Trust, et al.,<br><br>     Defendants. | Adversary No. 21-05122-jrs |

## STIPULATIONS OF FACT FOR TRIAL

COME NOW, Trustee William J. Layng, Jr. ("Trustee" or "Layng") and U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for VRMTG Asset Trust ("U.S. Bank"), and hereby submit the following Stipulations of Fact pursuant to this Court's Order entered on January 27, 2022:

1.     Layng is the duly authorized and acting trustee in the bankruptcy case of Weinstock & Scavo, P.C. ("Debtor").

2.     On December 4, 2012 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code").

3.     Trustee holds title to residential real property known as 2225 Wallace Road SW, Atlanta, Georgia 30331 (the "Property").  The estate obtained title to the Property in connection with the Trustee's turnover action captioned: *William J. Layng, Jr., as chapter 7 Trustee for the Estate of Weinstock & Scavo, P.C., Plaintiff, v. Charlton Carlos Lester, OTS, Inc., Jade Eye 72 Trust, Tie Ray Trust, Black Royal Trust and BMS Realty, LLC, Defendants; Adversary Proceeding No. 19-05234* (the "Fraudulent Transfer Case").

4.     On September 30, 2009, Charlton C. Lester executed a security deed conveying the Property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for CBC National Bank, its successors and assigns (the "First Priority Security Deed"). The First Priority Security Deed secures a loan in the original principal amount of $417,000.00, and is recorded in Deed Book 48403, Page 675, Fulton County, Georgia records. A true and correct copy of the Security Deed is attached hereto as **Exhibit "A"**.

5.     On December 30, 2015, MERS assigned the First Priority Security Deed to Wells Fargo Bank, N.A. via Corporate Assignment of Security Deed recorded on January 6, 2016, in Deed Book 55740, Page 82, Fulton County, Georgia records (the "First Assignment"). A true and correct copy of the First Assignment is attached hereto as **Exhibit "B"**.

6.     On August 5, 2019, Wells Fargo Bank, N.A. assigned the First Priority Security Deed to Specialized Loan Servicing, LLC via Corporate Assignment of Security Deed recorded on August 13, 2019, in Deed Book 60390, Page 208, Fulton County, Georgia records (the "Second Assignment"). A true and correct copy of the Second Assignment is attached hereto as **Exhibit "C"**.

7.     On March 18, 2021, Specialized Loan Servicing, LLC assigned the First Priority Security Deed to U.S. Bank via Assignment of Security Deed recorded on April 12, 2021, in

Deed Book 63551, Page 529, Fulton County, Georgia records (the "Third Assignment"). A true and correct copy of the Third Assignment is attached hereto as **Exhibit "D"**.

8.      The Trustee and U.S. Bank agree that U.S. Bank is the current holder of the First Priority Security Deed.

9.      The Trustee and U.S. Bank agree that as of December 9, 2021, the amount required to satisfy the debt due and owing on the First Priority Security Deed was $512,997.30.

10.     The Trustee and U.S. Bank agree that no payments have been received by U.S. Bank on the First Priority Security Deed since the payoff statement generated on December 9, 2021, and that the debt continues to exist and to accrue interest and all other charges allowable by the First Priority Security Deed and associated loan documents.

11.     The Trustee and U.S. Bank agree that the First Priority Security Deed is senior in priority to any other claim which could be asserted by any of the other Defendants in this adversary proceeding.

12.     The Certificate of Title for the Property examined in the real estate records of the Superior Court of Fulton County as of February 24, is attached as **Exhibit "E"** and shows the following liens in order of priority as follows:

a.  First Priority Security Deed to U.S. Bank- Deed Book 48403, Page 675, filed on September 30, 2009 in the original principal amount of $417,000.00;

b.  Security Deed to RBC Bank (USA)- Deed Book 48403, Page 688, filed on September 30, 2009 in the original principal amount of $117,500.00 (the "Second Priority Security Deed";

c.  Notice of Claim of Deed by Charlton Carlos Lester, Deed Book 64562, Page 142, filed September 29, 2021;

3

d.  Notice of Claim of Deed by Charlton Carlos Lester; Deed Book 64562, Page 176, September 29, 2021;

e.  UCC Financing Statement by Jermaine Bradley as secured party against Jade Eye 72 Trust as debtor; Deed Book 58019, Page 639, filed October 16, 2017;

f.  UCC Financing Statement by Charlton Lester as secured party against Charlton Carlos Lester, a Trust Entity, as debtor; Deed Book 60487, Page 697, filed September 9, 2019;

g.  UCC Financing Statement by Jermaine Bradley as secured party against Jade Eye 72 Trust as debtor; Deed Book 62055, Page 492, filed August 7, 2020;

h.  Lis Pendens Notice in the Fraudulent Transfer Case, Lien Book 4570, Page 76 filed June 24, 2019;

i.  Title Affidavit of Michael J. Campbell with attached Order in the Fraudulent Transfer Case transferring title to the Property to Trustee, Deed Book 62038, Page 57, filed on August 5, 2020;

j.  Fulton County- Fi Fa No. XXXXX; Lien Book 3945, Page 281, filed on June 19, 2017, *Louis Cohan and Weinstock & Scavo vs. Charlton Carlos Lester*, civil action no. 2011CV205919, judgment date- April 3, 2017 in the principal amount of $62,317.87;

k.  Notice of Federal Tax Lien against Omni Tech Institute, Inc., Lien Book 5087, Page 74, filed on April 9, 2021;


# # #

**STIPULATED TO:**

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)
**RUBIN LUBLIN, LLC**
3140 Avalon Ridge Place, Suite 100
Peachtree Corners, GA 30071
(678) 281-2730 (Telephone)
(404) 921-9016 (Facsimile)
bchaness@rlselaw.com
*Attorney for U.S. Bank Trust National Association,*
*not in its individual capacity but solely as*
*Owner Trustee for VRMTG Asset Trust*

*/s/ Theodore N. Stapleton*
Theodore N. Stapleton
Georgia Bar No. 675850
Attorneys for Trustee
Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339
Telephone: (770) 436-3334
tstaple@tstaple.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 1st day of March, 2022, filed the within and foregoing by

CM/ECF, which will serve notice on all parties.

*/s/ Bret J. Chaness*
BRET J. CHANESS (GA Bar No. 720572)

Deed Book 48403 Pg   675
Filed and Recorded Sep-30-2009 02:10pm
2009-0285032
Georgia Intangible Tax Paid $1,251.00
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

**CROSS REFERENCE**
DE Book 56794 Page 615

**ASGN**
DE Book 55740 Page 82

After Recording Return To:
CBC NATIONAL BANK

3010 ROYAL BOULEVARD SOUTH, SUITE 230

ALPHARETTA, GEORGIA 30022

RETURN TO
Hudnall Cohn Fyvolent & Shaver, P.C.
3471 Donaville Street
Duluth, GA 30096

09D8528R

_____[Space Above This Line For Recording Data]_____

MIN: 1008094-0909004342-7   **SECURITY DEED**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   SEPTEMBER 25, 2009   , together with all Riders to this document.
(B) "Borrower" is CHARLTON C. LESTER

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the grantee under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888)679-MERS.
(D) "Lender" is CBC NATIONAL BANK

Lender is   A NATIONAL BANK                                         organized and existing under the laws of
. Lender's address is  3010 ROYAL BOULEVARD
SOUTH, SUITE 230, ALPHARETTA, GEORGIA 30022
(E) "Note" means the promissory note signed by Borrower and dated    SEPTEMBER 25, 2009          .
The Note states that Borrower owes Lender   FOUR HUNDRED SEVENTEEN THOUSAND AND NO/100

Dollars (U.S. $ 417,000.00         ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   OCTOBER 1, 2039         .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower.  The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | LEGAL ATTACHED |

WAIVER OF BORROWER'S RIGHTS AND CLOSING ATTORNEY

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.01-IB/00    52065.15241                  Page 1 of 11                            Form 3011 1/01

Deed Book 48403 Pg 676

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the _____ COUNTY _____ of _____ FULTON _____ :
                              [Type of Recording Jurisdiction]                     [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which currently has the address of    2225 WALLACE ROAD SW
                                       [Street]

ATLANTA _____ , Georgia  30331 _____ ("Property Address"):
  [City]                          [Zip Code]

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.02-10/00   52065.15241            Page 2 of 11                                          Form 3011 1/01

Deed Book 48403 Pg 677

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.03-10/00     52065.15241                                                    Page 5 of 11                                                    Form 3011 1/01

Deed Book 48403 Pg 678

Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.04-10/00 ▬▬▬    Page 4 of 11                                                   Form 3011 1/01



Deed Book 48403 Pg  679

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee.  Lender shall have the right to hold the policies and renewal certificates.  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices.  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds.  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters.  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim.  The 30-day period will begin when the notice is given.  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property.  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property.  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition.  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.05-10/00     52065.15241                    Page 5 of 11                                              Form 3011  1/01

Deed Book 48403 Pg 680

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the forgoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.06-10/00     52065.15241

Page 6 of 11



Form 3011  1/01

Deed Book 48403 Pg 681

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.07-10/00      52065.15241          Page 7 of 11

Form 3011 1/01



Deed Book 48403 Pg 682

made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.  **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.  **Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAM3RS.08-10/00    52065.15241    Page 8 of 11    Form 3011  1/01

Deed Book 48403 Pg   683

18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects  Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.09-13/00      52065.15241                    Page 9 of 11                                                        Form 3011  1/01

Deed Book 48403 Pg 684

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.10-10/00      52065.15241                           Page 10 of 11

Form 3011  1/01

Deed Book 48403 Pg   685

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____        _____ (Seal)
Unofficial Witness                                    CHARLTON C. LESTER                   Borrower

_____        _____ (Seal)
Notary Public                                                                                              Borrower

My Commission Expires:                            _____ (Seal)
                                                                                                                    Borrower

_____ County   _____ (Seal)
                                                                                                                    Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Space Below This Line For Acknowledgment) _____

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.11-10/00        52065.15241              Page 11 of 11                                Form 3011  1/01

Deed Book 48403 Pg 686

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS
94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND
BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF
WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF
WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES
51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED
THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107
DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR
HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE
EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING
AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING
CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN;
RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND
EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE
SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN
IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY
ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9,
1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK
73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

Deed Book 48403 Pg  687
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

**GEORGIA**
**GRANTOR:**  CHARLTON C. LESTER

**LENDER:**  CBC NATIONAL BANK
**DATE OF SECURITY DEED:**  SEPTEMBER 25, 2009

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of

_____                    /_____(SEAL)
                                            -Grantor  CHARLTON C. LESTER

_____                    _____(SEAL)
Notary Public                               -Grantor

                                            _____(SEAL)
                                            -Grantor

                                            _____(SEAL)
                                            -Grantor

                                            _____(SEAL)
                                            -Grantor

                                            _____(SEAL)
                                            -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based upon said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____                    _____
Notary Public                               Closing Attorney

## FORECLOSURE/CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
CHARLTON C. LESTER

HP490257-10/98        52065.15241                                    WAIVER OF BORROWER'S RIGHTS (GEORGIA)

# EXHIBIT B

Deed Book 55740 Pg   82
Filed and Recorded Jan-06-2016 09:25am
2016-0002167
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9289-016 PO BOX 1629,
EAGAN, MN  55121-4400

## CORPORATE ASSIGNMENT OF SECURITY DEED

Fulton, Georgia
"LESTER"

MIN #: 100809409090043427  SIS #: 1-888-679-6377

### PREPARED BY: WELLS FARGO BANK, N.A.

Date of Assignment: December 29th, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CBC NATIONAL
BANK, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: CHARLTON C. LESTER  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed:  09/25/2009 Recorded:  09/30/2009  in Book/Reel/Liber: 48403 Page/Folio: 675 as
Instrument No.: 2009-0285032  In the County of Fulton, State of Georgia.

Assessor's/Tax ID No. 14F0094LL019

Property Address: 2225 WALLACE ROAD SW, ATLANTA, GA  30331

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Security Deed having an original principal sum of $417,000.00 with interest, secured thereby, and the full benefit of
all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CBC NATIONAL BANK, ITS
SUCCESSORS AND ASSIGNS
On  12/30/15

By: _____
Thomas Sutsada Sananikone
Assistant  Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS _____
Yves Akara Kenao

NOTARY WITNESS

*MS6*MS6WFEM*12/29/2015 08:36:02 AM* WFEM01WFEMA000000000000001401504* GAFULTO* GASTATE_MORT_ASSIGN_ASSN **BT4WFEM*

Deed Book 55740 Pg   83
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

STATE OF Minnesota
COUNTY OF Dakota

Subscribed and sworn to (or affirmed) before me on 12/30/15 ____, by   Thomas Sutsada Sananikone
Assistant  Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., proved to me on the basis of
satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

Tryphena V C Mitchell
Notary Expires: 1/31/2019

TRYPHENA V C MITCHELL
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2019

(This area for notarial seal)

*MS6*MS6WFEM*12/29/2015 08:36:02 AM* WFEM01WFEMA00000000000001401504* GAFULTO* GASTATE_MORT_ASSIGN_ASSN *BT4WFEM*

# EXHIBIT C

Deed Book 60390 Page 208
Filed and Recorded 8/13/2019 10:21:00 AM
2019-0298522
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 6660156138
0848497841

Parcel ID No. 14F0094 LL0193
Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. 1000 BLUE GENTIAN RD #200
MAC: N9289-018, EAGAN, MN  55121-4400



## CORPORATE ASSIGNMENT OF SECURITY DEED

Fulton, Georgia
"LESTER"

**PREPARED BY: WELLS FARGO BANK, N.A.**

Date of Assignment: July 31st, 2019
Assignor: WELLS FARGO BANK, N.A. at  1 HOME CAMPUS, DES MOINES, IA  50328
Assignee: SPECIALIZED LOAN SERVICING LLC at 8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO
80129

Executed By: CHARLTON C. LESTER  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed:  09/25/2009 Recorded:  09/30/2009  in Book/Reel/Liber: 48403 Page/Folio: 675 as
Instrument No.: 2009-0285032  In the County of Fulton, State of Georgia.

Property Address: 2225 WALLACE ROAD SW, ATLANTA, GA  30331

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Security Deed having an original principal sum of $417,000.00 with interest, secured thereby, and the full benefit of
all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

   TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

WELLS FARGO BANK, N.A.
On     8/5/19

By:
Thomas Sutsada Sananikone
Vice President Loan Documentation

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

Jennifer Roe Anderson

*VAS*VASWFEM*07/31/2019 01:51:01 PM* WFEM02WFEMA000000000000002135855* GAFULTO* GASTATE_MORT_ASSIGN_ASSN *TSWFEM*

Deed Book 60390 Page 209
Cathelene Robinson
Clerk of Superior Court

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

NOTARY WITNESS

STATE OF Minnesota
COUNTY OF Dakota

Subscribed and sworn to (or affirmed) before me on ___8-5-19___, by
___Thomas Sutsada Sananikone___, proved to me on the basis of satisfactory evidence to be the person(s)
who appeared before me.

WITNESS my hand and official seal,

_Yves Akara Kenao_

Yves Akara Kenao
Notary Expires:   /  /

1/31/22

YVES AKARA KENAO
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2022

(This area for notarial seal)

*VAS*VASWFEM*07/31/2019 01:51:01 PM* WFEM02WFEMA0000000000000002135655* GAFULTO* GASTATE_MORT_ASSIGN_ASSN **TSWFEM*

# EXHIBIT D

Deed Book 63551 Page 529
Filed and Recorded 04/12/2021 02:43:00 PM
2021-0154842
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9578415599
7067927936

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPECIALIZED LOAN SERVICING LLC**, whose address is **6200 S QUEBEC ST, GREENWOOD VILLAGE, CO 80111**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **888 7TH AVENUE 10TH FLOOR, NEW YORK, NY 10019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: **9/25/2009**
Original Loan Amount: **$417,000.00**
Executed by (Borrower(s)): **CHARLTON C. LESTER**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book **48403**, Page **675**
Document/Instrument No: **2009-0285032** in the Recording District of **Fulton, GA**, Recorded on **9/30/2009**.

Legal Description:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **2225 WALLACE ROAD SW, ATLANTA, GEORGIA 30331**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 3-18-2021

**SPECIALIZED LOAN SERVICING LLC, BY FAY SERVICING, LLC, ITS ATTORNEY-IN-FACT**

By: _____  Daniel Alvarado
Title: _____  Assistant Secretary



Witness Name: REGINA MCANNNOH

Witness Name: Claudia M. Andrews

Deed Book 63551 Page 530

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ___TEXAS___
County of ___DALLAS___

On _____3·18·21_____, before me, ___MARY CHAVARRIA___, a Notary Public, personally
appeared ___Daniel Alvarado___, ___Assistant Secretary___ of/for FAY
SERVICING, LLC, AS ATTORNEY-IN-FACT FOR SPECIALIZED LOAN SERVICING, LLC, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of ___TEXAS___ that the foregoing paragraph is true and correct. I further certify
___Daniel Alvarado___ signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_Mary Chavarria_

(Notary Name): ___MARY CHAVARRIA___
My commission expires: ___3·31·25___

MARY CHAVARRIA
Notary Public, State of Texas
Comm. Expires 03-31-2025
Notary ID 126110395

Deed Book 63551 Page 531
CATHELENE ROBINSON
Clerk of Superior Court

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS
94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND
BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF
WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF
WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES
51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED
THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107
DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR
HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE
EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING
AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING
CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN;
RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND
EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE
SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN
IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY
ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9,
1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK
73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

3800971 Freddie Mac NPL 2020-1 13564145

 **Intown**Title, LLC

152

Page 1 of

7110 W 48th Ave.
Wheat Ridge, CO 80033
303.495.0661 office
Intowntitle.com

File No.: Theodore Stapleton

## CERTIFICATE OF TITLE

Date: 02/28/22     Purchaser: _____

Effective Date: 02/17/22 _____ Search Type: Full X___ Limited ___ Other: _____

Record Title Vested In: Harold Ruben Maddox _____

Deed Type: TRD   Dated: 02/01/22 ____ Filed: 02/02/22 ____ Deed Book: 65215 ___ Page: 612 ____ JTWROS: No ___

### SCHEDULE A

**Plat Shows:**

Barb wire fence along side & rear
lot lines.
_____
_____

Land Lot(s): 94 & 105 _____ District: 14FF ___ Section: _____

County: Fulton _____ Lot(s): 6.4 acres _____ Block: _____

Subdivision: Property of Mrs. Gussie Traw Reneger ____

_____
_____
_____
_____
_____

_____ Plat Book: 73 _____ Page(s): 70 _____

Address: 2225 Wallace Road _____

### SCHEDULE B

**Restrictive Covenants:**         X ____ none of record/expired

Located at _____ Book _____ Page _____ Amended: Yes ___ No ____ Mand Assessments: Yes ____ No ____

Note: _____

**Easements, Rights of Way, etc.:**

1 Sewer Easement ___ to Fulton County _____ at Deed Book 4820 ___ Page 285 ___, dated 10/20/67 ___.

2_____ to _____ at Deed Book _____ Page _____, dated _____.

3_____ to _____ at Deed Book _____ Page _____, dated _____.

4_____ to _____ at Deed Book _____ Page _____, dated _____.

5_____ to _____ at Deed Book _____ Page _____, dated _____.

6_____ to _____ at Deed Book _____ Page _____, dated _____.

7_____ to _____ at Deed Book _____ Page _____, dated _____.

8_____ to _____ at Deed Book _____ Page _____, dated _____.

9_____ to _____ at Deed Book _____ Page _____, dated _____.

**(Continued on Page 2)**

Page 2

File No: Theodore Stapleton

**Open Security Deeds:**

1. **Mortgagor:** Charlton C. Lester (still open, no release found on record)

   **Mortgagee:** Mers Inc. as nominee for CBC National Bank

   **Deed Book:** 48403      **Page:** 675      **Dated:** 09/25/09      **Filed:** 09/30/09

   **Amount: $** 417,000           **Maturity Date:** 10/01/39

   **Assigned to:** US Bank Trust NA, not in its indivudual capacity but solely as owner Trustee for VRMTG Asset Trust

   **Deed Book:** 63551      **Page:** 529           **, dated:** 04/12/21      .

   **Notes:** Modified @ DB 56794/615 filed 12/06/16 attached.

2. **Mortgagor:** **Charlton C. Lester (still open, no release found on record)

   **Mortgagee:** RBC Bank (USA)

   **Deed Book:** 48403      **Page:** 688      **Dated:** 09/25/09      **Filed:** 09/30/09

   **Amount: $** 117,500           **Maturity Date:** 10/01/29

   **Assigned to:** _____

   **Deed Book:** _____ **Page:** _____, **dated** _____.

   **Notes:** Notice of Claim Deed by Charlton Carlos Lester filed 09/29/21 @ DB 64562/142 attached.


**Liens and Judgments: None** _____   **Yes,** 1 @ LB 3954/281. _____ **(copies attached)**


**Additional Exceptions/Notes:**

Subject Property was transfered by Order as part of Affidavit filed 08/05/20 @ DB 62038/57
to William J Layng, Jr., as chapter 7 trustee for the estate of Weinstock & Savo, P.C. who
conveyed Subject Property to Harold Ruben Maddox in Trustee's deed filed 02/02/22 @ DB
65215/612.

Security Deed # 3: Mortgagor: Harold Ruben Maddox. Mortgagee: Mers Inc. as nominee for
Movement Mortgage, LLC @ DB 65215/619, dated 02/01/22, filed 02/02/22, $ 747,000,
matures 03/01/52.

Notice of Claim Deed by Charlton Carlos Lester filed 09/29/21 @ DB 64562/142 attached.
UCC Financing Statements @ DB 58019/639 filed 10/16/17; @ DB 60487/697 filed
09/09/19; DB 62055/492 filed 07/07/20.
Lis Pendens Notice @ LB 4570/76 filed 06/14/19 attached.

_____
_____
_____
_____

\*Note: Unless otherwise instructed, purchasers are searched for Federal Tax Liens only.

Deed Book **48403** Pg **673**
Filed and Recorded Sep-30-2009 02:10pm
**2009-0285031**
Real Estate Transfer Tax $669.00
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

Return to: Marianne T. Shaver
Hudnall, Cohn, Fyvolent & Shaver, P.C
3471 Donaville Street
Duluth, Georgia 30096

File #09D8528R/**LESTER**

# WARRANTY DEED

State of Georgia
County of Gwinnett

This Indenture made this 25th day of September, in the year Two Thousand Nine, between

## WILLIE F. BRITTIAN and LINDA BRITTIAN

of the State of GEORGIA, as party or parties of the first part, hereinafter called Grantor, and

## CHARLTON C. LESTER

of the County of FULTON, and State of GEORGIA, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors, and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveys and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee:

**FOR LEGAL DESCRIPTION SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

Subject to all easements and restrictions of record.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has signed and sealed this deed, the day and year first above written.

Signed, sealed and delivered
in presence of:

_____
Unofficial Witness

X _____ (SEAL)
WILLIE F. BRITTIAN

_____
Notary Public
my commission expires:

_____ (SEAL)
LINDA BRITTIAN

MARIANNE T. SHAVER
NOTARY
EXPIRES
GEORGIA
March 10, 2012
PUBLIC
DEKALB COUNTY

Deed Book 48403 Pg 674
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.



I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK 48403 PG 613 within this office this 14th day of Feb 20 22
CATHLENE ROBINSON, Clerk of Superior Court, Fulton County, GA

By _____  Deputy Clerk

not valid unless signed in RED ink



Deed Book 49722 Pg 598
Filed and Recorded Jan-04-2011 02:32pm
2011-0002039
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

# QUITCLAIM DEED

A298-10
R298-04

**THIS QUITCLAIM DEED,** Executed this 14th day of December 2010, by first party, Grantor, Charlton C. Lester, whose post office address is 3434 Hamlin Square, SW, Atlanta, GA 30331 to second party, Grantee, OTS, Inc., whose post office address is P.O. Box 43846, Atlanta, GA 30336.

**WITNESSETH,** That the said first party, for good consideration and for the sum of One Dollar ($1.00) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of Fulton, State of Georgia, to wit:

All that tract or parcel of land lying and being in Land Lots 94 and 105 of the 14th (FF) District, Fulton County, Georgia, being more particularly described as follows:

Beginning at an iron pin located on the Southwesterly side of Wallace Road at the intersection of the Southwest side of Wallace Road and the East line of Land Lot 105; running thence Northwesterly along the Southwesterly side of Wallace Road, fifty-one and six-tenths (51.6) feet to an iron pin; running thence Southwesterly, forming an interior angle of 88 degrees 51 minutes with the preceding call a distance of three hundred thirty-eight and one-tenth (338.1) feet to an iron pin; running thence Southwesterly, forming an interior angle of 107 degrees 24 minutes with the preceding call a distance of four hundred twenty-six (426) feet to an iron pin located on the Easterly line of Land Lot 105, running thence Easterly, forming an interior angle of 128 degrees 12 minutes with the preceding call, a distance of five hundred thirty (530) feet to an iron pin; running thence Northerly, one hundred eighty-eight and eight-tenths (188.8) feet to an iron pin; located on the Southwesterly side of Wallace Road; running thence Northwesterly along the Southwesterly side of Wallace Road, six hundred seventy-nine and nine-tenths (679.9) feet to an iron pin and the point of beginning, as shown on survey entitled property of Mrs. Gussie Traw Reneger, dated August 9, 1961, prepared by C.E. Ruppe, Engineer, and recorded in plat book 73, Page 70, Fulton County, Georgia records.



(1)

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

_Morgan Howa_
Signature of Witness (First Party)

_[signature]_
Signature of First Party
Charlton C. Lester

_Morgan Howe_
Signature of Witness (Second Party)

_[signature]_
Signature of Second Party
Authorized Officer of OTS, Inc.

State of Georgia
County of DeKalb

On this _14th_ day of _December_, _2010_ before me, _Charlton C. Lester_ appeared, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to within this instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Inger Fletcher_
Signature of Notary

My Commission Expires:

INGER FLETCHER
NOTARY PUBLIC
DEKALB COUNTY, GEORGIA
MY COMMISSION EXPIRES 11-21-2012

Affiant ✓ Known ____ Produced ID
Type of ID _____

Deed Book 49722 Pg 599
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

(2)

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE-BK 49722 PG 598-599 in this office this 24th day of Feb 2022
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _Julia Brown_ Deputy Clerk
not valid unless signed in RED ink



Deed Book 56394 Pg 173
Filed and Recorded Jul-22-2016 10:11am
2016-0232003
Real Estate Transfer Tax $0.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

## QUITCLAIM DEED

THIS QUITCLAIM DEED, Executed this 21st day of July 2016, by first party, Grantor OTS, Inc., whose post office address is P.O. Box 43846, Atlanta, GA 30336 to second party, Grantee Charlton C. Lester, whose address is 3434 Hamlin Square, SW, Atlanta, GA 30331.

WITNESSETH, That the said first party, for good consideration and for the sum of One Dollar ($1.00) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said party forever, all the right title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of Fulton, State of Georgia, to wit:

All that tract or parcel of land lying and being in Land Lots 94 and 105 of the 14th (FF) District, Fulton County, Georgia, being more particularly described as follows:

Beginning at an iron pin located on the Southwesterly side of Wallace Road at the intersection of the Southwest side of Wallace Road and East line of Land Lot 105; running thence Northwesterly along the Southwesterly side of Wallace Road, fifty-one and six-tenths (51.6) feet to an iron pin; running thence Southwesterly, forming an interior angle of 88 degrees 51 minutes with the preceding call a distance of three hundred thirty-eight and one-tenth (338.1) feet to an iron pin; running thence Southwesterly, forming an interior angle of 107 degrees 24 minutes with the preceding call a distance of four hundred twenty-six (426) feet to an iron pin located on the Easterly line of land Lot 105, running thence Easterly, forming an interior angle of 128 degrees 12 minutes with the preceding call, a distance of five hundred thirty (530) feet to an iron pin; running thence Northerly, one hundred eighty-eight and eight-tenths (188.8) feet to an iron pin; located on the Southwesterly side of Wallace Road; running thence Northwesterly along the Southwesterly side of Wallace road, six hundred seventy-nine and nine-tenths (679.9) feet to an iron pin and the point of beginning, as shown on survey entitled property of Mrs. Gussie Traw Reneger, dated August 9, 1961, prepared by C.E. Ruppe, Engineer, and recorded in plat book 73, Page 70, Fulton County, Georgia records.



Deed Book 56394 Pg 174
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written. Signed, sealed and delivered in presence of:

_____
Signature of Witness (First Party)

_____
Signature of Witness (Second Party)

_____
Signature of Second party
Charlton C. Lester

_____
Signature of First party
Authorized Officer of OTS, Inc.

State of Georgia
County of DeKalb

On this 21st day of July, 2016 before me, ____Charlton C. Lester____ appeared, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to within this instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

**WITNESS my hand and official seal.**

_____
Signature of Notary

LAVIETTE R ALSTON
Notary Public
Fulton County
State of Georgia
My Commission Expires Nov 8, 2016

Affiant ____✓____ Known _____ Produced ID
Type of ID _____

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK 56394 PG 173-174 in this office this 24th day of Feb 20 22
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink



Deed Book 58019 Pg 634
Filed and Recorded Oct-16-2017 08:46am
2017-0303847
Real Estate Transfer Tax $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

WHEN RECORDING IS COMPLETED MAIL

ORIGINAL COPY TO:

**JADE EYE 72 TRUST**
**150 East Campbellton Rd**
**Fairburn, GA 30213**

## WARRANTY DEED

THIS WARRANTY DEED is being made this 10th day of February 2017 by Charlton C. Lester Grantor(s) AND TOTALLY CONVEYED TO Grantee, JADE EYE 72 TRUST as under Trust Agreement date February 10, 2017 with full power and authority, to protect, conserve, sell, lease, encumber or otherwise manage and dispose of said property, Grantee(s) address are 150 East Campbellton Road, Fairburn, GA 30213.

WITNESSETH, that the said first party, for and in consideration of the sum of <u>$21.00 in silver coin</u> of the US in hand along with other good and valuable consideration, conveys, grants, bargains, sells, confirms and warrants, for payment as paid by the second party, the receipt whereof, is hereby acknowledged does hereby remise, release and quit-claim unto the said Grantee forever all the right, title, interest, claim and demand which the said first party(s) Charlton C. Lester address P.O. Box 43846, Atlanta, GA 30336 has in and to and shall acquire in the following described lot, piece, or parcel of land, situated, lying and being in the County of Fulton, State of Georgia, to wit Commonly Known As 2225 Wallace Road, Atlanta, GA 30331 . See Exhibit "A" for legal Description.

TO HAVE AND TO HOLD the said property in fee simple absolute upon the above said trust and for uses and purposes herein and in said trust agreement set forth.

Full power and authority is hereby granted to said Trustee(s) to improve, subdivide, protect, conserve, sell, lease, encumber and otherwise manage and dispose of said property or any part thereof, to dedicate parks, streets, highways or alleys and to vacate any subdivision or part thereof, and to re-subdivide said property as often as described, to contract to sell, to grant options to purchase, to sell on any terms, to convey either with or without consideration, to convey said property or any part thereof to a successor or successors in trust and to grant to such successor or successors in trust all of the title, estate, powers and authorities vested in said

Nm: ANDREW GUTIERREZ CertDocCpy-I CFN-DE2017-0303947 OBB DE BK58019 PG0634 Pgs 16 Instr:WD Page 12 of 5
Deed Book 58019 Pg 635

Trustee(s), to donate, to dedicate, to mortgage, pledge or otherwise encumber said property, or any part thereof, to lease said property or any part thereof, from time to time, in possession or reversion, by leases to commence in present or in future, and upon any terms and for any period or periods of time, not exceeding in the case of any single demise the term of 99 years and to renew or extend leases upon and terms and for any period or periods of time and to amend, change or modify leases and the terms and provision thereof at any time or at times hereafter, to contract to make leases and to grant options to lease and options to renew leases and options to purchase the whole or in any part of the reversion and to contract respecting the manner of fixing the amount of present or future rentals, to partition or to exchange said property, or any part thereof, for other real or personal property, to submit said property to condominium, to grant easements or charges of any kind, to release, convey or assign any right, title or interest in or about or easements appurtenant to said premises or any part thereof, and to deal with said property and every part thereof in all ways and for such considerations as it would be lawful for any person owning the same to deal with the same, whether similar to or different from the ways above specified, at any time or times hereafter.

Any contract, obligation or indebtedness *incurred* or entered into by the Trustee(s) in connection with said property shall be as Trustee(s) of an express trust and not individually and the Trustee(s) shall have no obligation whatsoever with respect to any such contract, obligation or indebtedness except only so far as the trust property in the actual possession of the Trustee(s) shall be applicable for the payment and discharge thereof; and it shall be expressly understood that any representations, warranties, covenants, undertakings and agreements hereinafter made on the part of the Trustee(s), while in form purporting to be the representations, warranties, covenants, undertakings and agreements of said Trustee(s), are nevertheless made and intended not as personal representations, warranties, covenants, undertakings, and agreements by the Trustee(s) of for the purpose or with the intention of binding said Trustee(s) personally, but are made and intended for the purpose of binding only the trust property specifically described herein, and that no personal liability or personally responsibility is assumed by nor shall at any time be asserted or enforceable against the Trustee(s) individually on account of any instrument executed by or on account of any representation, warranty, covenant, undertaking or agreement of the said Trustee(s), either expressed or implied, all such personal liability, if any, being expressly waived and released and all persons and corporations whomsoever and whatsoever shall be charged with notice of this condition from the date of the filing of the record of this Deed.

In no case shall any party with said Trustee(s) in relation to said property, or to whom said property or any part thereof shall be conveyed, contracted to be sold, leased or mortgaged by said Trustee(s), be obliged to see to the application of any purchase money, rent or money borrowed or advanced on said property, or be

Nm: ANDREW GUTIERREZ   Cert Doc Copy-I  CFN DE2017 0303947  ORB DE BK 58019 PG 0634  Pgs 15  Instr: WD Page : 3 of 5

obliged to see that the terms of this trust have been complied with, or be obliged to inquire into the necessity or expediency of any act of said Trustee(s), or be obliged or privileged to inquire into any of the terms of said trust agreement; and every deed, trust deed, mortgage, lease or other instrument executed by said Trustee(s0 in relation to said property shall be conclusive evidence in favor or every person relying upon or claiming under any such conveyance, lease or other instrument, (a) that at the time of the delivery thereof the trust created by this Indenture and by said trust agreement was in full force and effect, (b) that such conveyance or their instrument was executed in accordance with the trusts, conditions and limitations contained in the Indenture and in said trust agreement or in some amendment thereof and binding upon all beneficiaries thereunder, (c) that the Trustee(s0 was duly authorized and empowered to execute and deliver every such deed, trust deed, lease, mortgage or other instrument and (d) if the conveyance is made to a successor or successors in trust, that such are fully vested with all the title, estate, rights, powers, authorities, duties and obligations of its, his or their predecessor in trust.

The interest of each beneficiary under the trust agreement hereunder and of all persons claiming under them or any of them shall be only in *possession,* earnings, avails and proceeds arising from the sale or other disposition of said property, and such interest is hereby declared to be personal property, and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said property as such, but only an interest in the possession, earnings, avails and proceeds thereof as aforesaid.

In Witness Whereof, Grantor has hereunto set grantor's hand and seal the day and year first above written signed, seal and delivered in our presence:

By: _____

    Charlton C. Lester    (Grantor)

Witness _____

Witness _____



Nm. ANDREW GUTIERREZ CertDocCpy-I CFN DE2017-0303847 ORB DE BK58019 PG0634 Pas 15 Instr:WD Page :1 of 5
Deed Book 58019 Pg 637

STATE OF GEORGIA )
) SS
COUNTY OF DeKalb )

I HEREBY CERTIFY that on this day before me, an officer duly qualified to take acknowledgments, personally appeared Charlton C. Lester, (grantor) to me known to be the persons described in and who executed the foregoing instrument and acknowledged before me that he executed the same by his free hand and deed.

WITNESS my hand and official seal in the County and State lost aforesaid this _10_ day of _March_ 2017.

Notary

STATE OF GEORGIA )
) SS
COUNTY OF DeKalb )

I HEREBY CERTIFY that on this day before me, an officer duly qualified to take acknowledgments, personally appeared Jermaine Bradley as (trustee) for JADE EYE 72 TRUST, (grantee) and to me known to be the persons described in and who executed the foregoing instrument and acknowledged before me that he executed the same by his free hand and deed.

WITNESS my hand and official seal in the County and State lost aforesaid this _10_ day of _March_ 2017.

By:
Trustee

Prepared by: JADE EYE 72 TRUST

Notary





Deed Book 58019 Pg 638
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "A"

**THE LAND AND/OR PROPERTY REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:**

**PHYSICAL ADDRESS:** 2225 Wallace Road, Atlanta, GA 30331

**PROPERTY LEGAL DESCRIPTION:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14th (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HLTNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961. PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73. PAGE 70. FULTON COLINTY, GEORGIA RECORDS.

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK 58019 PG 638 in this office this 24th day of Feb 20 22
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink



Lien   4570 Pg      76
Filed and Recorded Jun-24-2019 09:25am
2019-0250721
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | : | **CHAPTER 7 CASE** |
| **WEINSTOCK & SCAVO, P.C.,** | : | **NO. 12-80220** |
| Debtor. | : | |
| | : | |
| **WILLIAM J. LAYNG, JR.,** as chapter 7 Trustee for the Estate of **WEINSTOCK & SCAVO, P.C.,** | : | |
| Plaintiff, | : | **ADVERSARY PROCEEDING** |
| | : | **NO. 19-05234** |
| v. | : | |
| **CHARLTON CARLOS LESTER, OTS, INC., JADE EYE 72 TRUST, TIE RAY TRUST, and BMS REALTY, LLC,** | : | |
| Defendants. | : | |

## LIS PENDENS NOTICE

Notice is hereby given, pursuant to O.C.G.A. § 23-1-18 and O.C.G.A. Title 44, Chapter 14, Article 9, that the above styled case is pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

Said suit involves the real property described in Exhibit "A" attached hereto, incorporated herein, and made a part hereof.

The relief sought in said suit against said real property is as follows: Complaint For Turnover Of Property Of The Estate, For Avoidance Of Fraudulent Transfers And Other Relief.

This 23rd day of June 2019.





1

Lien 4570 Pg 77
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

THEODORE N. STAPLETON

/s/ Theodore N. Stapleton
Georgia Bar No. 675850
Attorneys for Chapter 7 Trustee

Suite 100-B
2802 Paces Ferry Road, NW
Atlanta, Georgia 30339
(770) 436 3334
tstaple@tstaple.com

## EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

2

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in LN BK 4570 PG 76-77 in this office this 24 day of FEB 20 22. CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink

Deed Book 60487 Pg 697
Filed and Recorded Sep-09-2019 03:45pm
2019-0314677
Real Estate Transfer Tax $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Charlton C Lester
c/o 2225 Wallace Rd SW
Atlanta, GA postal zone [30349]

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| CHARLTON CARLOS LESTER, a Trust Entity | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| P.O. BOX 492289 | ATLANTA | | GA | 30349 | US |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| Lester | Charlton | | C | | |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| c/o 2225 Wallace Road | Non-domestic without the | | Ga | 30349-9998 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

Per the contract, the above Secured Party, a living man, hereby duly gives notice of claim to (1) all right, interest and title in STATE OF GEORGIA Certificate of Birth #414-A0014630759 as received by the NEW JERSEY DEPARTMENT OF HEALTH, BUREAU OF VITAL STATISTICS ON January 27, A. D. 1964, and the pledge represented by same, not limited to the pignus, hypotheca, hereditiments, res, the energy and all products derived therefrom, and all signatures on all contracts and agreements predicated on the legal entity described above as Debtor, nunc pro tunc to the date of creation, (2) all right, interest and title in the bond(s) behind Certificate of Birth #414-A0014630759, which represents the pre-paid financing on any and all activities of Debtor, and (3) all right, interest and title in any and all indentures, debentures and bonds of Debtor, nunc pro tunc to the date of creation.   The Secured Party further claims all right, interest and title in all of the Debtor's titled and non-titled interests in assets, possessions, property, resources and licenses, etc., including, but not limited to, STATE OF GEORGIA DRIVER LICENSE #0433850080,  private land commonly identified by the public as being located at "2225 Wallace Road" at Atlanta, on Georgia, and any and all funds due to the Debtor from the Debtor's Social Security contract identified by account number 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.     [Continued on Addendum #1]

| 5. Check only if applicable and check only one box: Collateral is | ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|---|
| 6a. Check only if applicable and check only one box: | | 6b. Check only if applicable and check only one box: | |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☑ A Debtor is a Transmitting Utility | | ☑ Agricultural Lien ☐ Non-UCC Filing | |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☑ Bailee/Bailor ☐ Licensee/Licensor | | | |

**8. OPTIONAL FILER REFERENCE DATA:**
Secured Party:  By:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)                International Association of Commercial Administrators (IACA)

Deed Book 60487 Pg 698

# UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**
CHARLTON CARLOS LESTER, NON-ADVERSE, NON-BELLIGERENT, NON- COMBATANT BAILEE

OR

**9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**
CHARLTON CARLOS LESTER, NON-ADVERSE, NON-BELLIGERENT, NON- COMBATANT BAILEE

OR

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 8801 NW 31st AVENUE | MIAMI | FL | 33150 | USA |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME  or  ☑ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Lester El | Charlton | C | |

| 11c. MAILING ADDRESS | CITY | | | COUNTRY |
|---|---|---|---|---|
| General-Post Office, 2225 Wallace Rd SW | Atlanta | "Nation" Georgia | near [30049-9998] | United States Mint |

[With THIS NOTE IS LEGAL TENDER FOR ALL DEBTS, PUBLIC AND PRIVATE]

10,000,000,000.00 :

[10,000,000,000.00]

10,000,000,000.00 ~

Being age of majority, Secured Party exercises claim in recoupment, this certificate vessel #401-A001620750, for pledge and grant of bailment of person and property (credit/value of a living sole) in state of infancy accepted by and delivered to Debtor/Bailee as consideration for act of bailment by Secured Party, received by the State of New Jersey department of vital records services, pledge represented by the same but not limited to the Figure: Hypothecs, Hereditaments, ORB, the energy and all products derived there from but not limited to the all capitalized names (LESTER, CHARLTON CARLOS , the CHARLTON CARLOS LESTER) and/or any derivative thereof and all contracts and signatures produced on the above card described on the Debtor. Any and every attempt to classify the Secured Party creditor in order to commute an act of property is done so at cost of $10,000,000,000.00.

**13.** ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

**17. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

Deed Book 60487 Pg 699

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS

| 11. INITIAL FINANCING STATEMENT FILE NUMBER: Same as item 1a on Amendment form |
|---|

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT:** Same as item 9 on Amendment form

12a. ORGANIZATION'S NAME
CHARLTON CARLOS LESTER, NON-ADVERSE, NON-BELLIGERENT, NON- COMBATANT BAILEE —

OR

12b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**13.** Name of DEBTOR on related financing statement (Name of a current Debtor of record required for indexing purposes only in some filing offices - see Instruction item 13): Provide only one Debtor name (13a or 13b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); see Instructions if name does not fit

13a. ORGANIZATION'S NAME

OR

| 13b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

For the ESTATE, JDB LEGIS A CESTUI QUE TRUST etal

Authorized Signature By: _____ , Secured Party

Charlton Carlos Lester

Living, Breathing, Sentient Being

All Rights Reserved, Without Prejudice

UCC-1 207, UCC 1-308 and UCC 1-419

Per 12 U.S. Code §95 a (2) and 12 U.S. Code § 95 b, UCC, Section 1-103 and 1-101 House Joint Resolution 192 of June 5th, 1933 Public Law-73-10 Chapter 48,48 stat 112 under the Sovereign Immunity Act.
The record Kahre case proves that one is NOT precluded from dealing in the constitutional money and is not prevented from choosing to PAY debts instead of merely DISCHARGING them.
All of DEBTOR's assets, on Land, Air, Sea, Space, all personal property, and all DEBTOR's right, title and interest in right, and interest in all said assets, Land and personal property, now owned and hereafter acquired, now existing and hereafter arising, & wherever located. Here, There & Abroad, All Continents Included.
" There every Man is Independent of all laws, Except Those prescribed by nature. He is not bound by any Institutions formed by his fellowman without his consent," CRUDEN V NEALE, 2N.C.338 (1796) 2S.E.70.
Any Violation of this Contract is Subject to a Penalty Fee of $ 100,000,000,000.00 Dollars;
Per Incident, Public Notice and Declaration The Law Does Not Permit Impossibilities, to access Original Jurisdiction Constitutional Rights.

COUNTY OF: FULTON

STATE OF GEORGIA                    Acknowledgment of Individual
On this day personally appeared before me Charltou C. Lester known to be the individual(s) described within and who executed the foregoing instrument, and acknowledged the same as his/her their free and voluntary act and deed, for the uses and purposes therein mentioned.
Given under my hand and seal of office this 8 day of Sept 2019.
Signature: J Bradley My Commission Expires: 2-5-2022

Notary Public residing at: 140 E Campbellton St Fairburn Ga
Printed Name: _____ By: Charlton Hou Lester Carlos

**Jermaine Bradley**
**NOTARY PUBLIC**
**Fulton County, GEORGIA**
**My Comm. Expires 02/05/2022**

**15. This FINANCING STATEMENT AMENDMENT:**
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

**16.** Name and address of a RECORD OWNER of real estate described in item 17 (if Debtor does not have a record interest):

NEW JERSEY
140 E Front St
Trenton, NJ 08625

**17.** Description of real estate:

All property belonging to Secured Party is subject to claims and defences:
1. Declaration of Independence for protection and defense of the self-evident truth; and
2. State as Administrator and Usufructuary; and
Quiet enjoyment of property and persons remains with Secured Party with care and maintenance provided by Usufructuary.
As a real -man with hands and legs, and real -land in the United States of America-WITH TRUST
IN GOD, this real-estate is with the PUBLIC -I-OUT-OF MANY all 50 states

**18. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT ADDENDUM (Form UCC3Ad) (Rev. 04/20/11)

International Association of Commercial Administrators (IACA)

# STATE OF NEW JERSEY

Deed Book 63687 Ps

# CERTIFICATE OF BIRTH

**NAME OF CHILD**

## *CHARLTON CARLOS LESTER*

| DATE OF BIRTH | TIME | SEX |
|---|---|---|
| *JANUARY 17, 1964* | *19:12 PM* | *MALE* |

Non-Negotiable, Non-Transferable Charge Back Office Holder - Secretary of the Treasury I accept for value all related endorsements in accordance with UCC 3-419, HJR 192 and Public Law 73-10. Charge my Private UCC Contract Trust Account Employer Identification #150643104 for the registration fees and command the memory of account #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 to charge the same to the Debtor's Order, or your Order. Employer Identification #150643104 – Bond # 414-A0014630759 – Pre-Paid – Preferred Stock – Priority Exempt from Levy – Posted: Certified Account
Invoice #CCL2019990 Date 09/09/2019

**NAME OF PARENT**

## *RUBY GLOVER*

**NAME OF PARENT**

## *LUCAS LESTER*

**PLACE OF BIRTH**

## *PATERSON CITY*

**COUNTY OF BIRTH**

## *PASSAIC*

**DATE ISSUED:**

*JULY 8, 2019*

**FILE NUMBER**

*414*

**DATE FILED WITH REGISTRAR:** *02/07/1964*

**ISSUED BY:**
**City of Paterson**
**Health Department**
**Karen Sizer-Martin, Registrar**

8112359873

This is to certify that the above is correctly copied from a record on file in my office.

Certified copy not valid unless the raised Great Seal of the State of New Jersey or the seal of the issuing municipality or county, is affixed hereon.

REG 49A
JUN 14





Vincent T. Arisi
State Registrar
Office of Vital Statistics and Registry

THIS DOCUMENT HAS MULTIPLE SECURITY FEATURES. HOLD TO LIGHT. VOID IF ALTERED

Deed Book 60487 Pg 701

# ATTACHMENT "A" – PROPERTY LIST
## ATTACHMENT TO COMMERCIAL SECURITY AGREEMENT # CCL-AA101

**All of the property listed in this Property List is protected by all terms, conditions, and agreements contained in all the documents recorded herein.**

1.  All land in which DEBTOR has an interest, including the soil itself; all minerals atop or beneath the soil surface; all air rights; all waters on or in the soil or land surface such as a lake or pond, within the land boundaries;

2.  All real property and all documents involving all real property in which DEBTOR has an interest, including all buildings, structures, fixtures, and appurtenances situated on or affixed thereto, as noted in #1 above;

3.  All personal property and all documents involving all personal property in which DEBTOR has an interest.

4.  All household goods and appliances, linen, wardrobe, toiletries, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, collectibles, collections, antiques, etc.;

5.  All ownership, equity, property, and rights to property now owned or held or hereafter acquired in all businesses, corporations, companies, partnerships, limited partnerships, organizations, proprietorships, and the like; and all books and records pertaining thereto; all income therefrom; and all accessories, accounts, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;

6.  All cottages, cabins, houses, mansions, and buildings of whatever type and wherever located;

7.  All bank accounts foreign and domestic, bank "safety" deposit boxes and the contents therein; personal security codes, passwords, and the like associated therewith; credit card accounts, mutual fund accounts, certificates of deposit accounts, checking accounts, savings accounts, retirement plan accounts, stocks, bonds, securities, and benefits from trusts;

8.  All inventory from any source;

9.  All machinery, either farm or industrial; all mechanical tools, construction tools, tools of trade;

10. All boats, yachts, and watercraft; and all equipment, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, inter alia: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, fuels, and fuel additives;

11. All aircraft, gliders, balloons, and all equipment, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, inter alia: all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, fuels, and fuel additives;

12. All motor homes, trailers, mobile homes, recreational vehicles, houses, cargo, and travel trailers; and all equipment, accoutrements, baggage, and cargo affixed or pertaining thereto or stowed therein, inter alia: all ancillary equipment, accessories, parts, service equipment, lubricants, fuels, and fuel additives;

13. All animals and all farm livestock; and all things required for the care, feeding, use, transportation, and husbandry thereof;

14. All pets, including cats, dogs, birds, fish, or whatever other of the animal kingdom has been gifted or otherwise acquired: whether kept indoors or outdoors; with all fixtures, vehicles, and housings required for their protection, feeding, care, transportation, shelter, and whatever other needs may arise;

15. All vehicles, autos, trucks, four-wheel vehicles, trailers, wagons, motorcycles, bicycles, tricycles, wheeled conveyances of any kind, motorized or otherwise, in which DEBTOR has an interest;

16. All computers, computer-related equipment and accessories, flash drives, electronically stored files or data, telephones, electronic equipment, office equipment and machines;

17. All visual reproduction systems, aural reproduction systems, motion pictures, films, video tapes, audio tapes, sound tracks, compact discs, DVDs, ipods, digital audio/video players, phonograph records and players, film, slides and projectors, photography and video and aural production equipment, cameras, projectors, tape recorders, cassette players, etc.;

18. All manuscripts, books, booklets, pamphlets, treatises, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs, music;

19. All books and financial records of DEBTOR;

20. All trademarks, registered marks, copyrights, patents, proprietary data and technology, inventions, intellectual property

Deed Book 60487 Pg 702

royalties, good will;

21. All public or private scholastic degrees, titles, credentials, medals, trophies, honors, awards, recognitions, meritorious citations, certificates from apprenticeship training and/or continuing education programs, etc., from whatever source, for whatever trade, occupation, work, or endeavor;

22. All military (Army, Navy, Air Force, Marine, National Guard, etc.) discharge papers, and the like;

23. All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, computer production or storage of all kinds whatsoever;

24. All rights to obtain, use, request, refuse, or authorize the administration of any food, beverage, nourishment, or water, or any substance to be infused or injected into or affecting the body by any means whatsoever;

25. All rights to obtain, use, request, refuse, or authorize the administration of any drug, manipulation, material, process, procedure, ray, or wave which alters or might alter the present or future state of the body, mind, spirit, free will, faculties, and self by any means, method, or process whatsoever;

26. All keys, locks, lock combinations, encryption codes or keys, safes, secured places, and security devices, security programs, software, user names, passwords, machinery, or devices related thereto;

27. All rights to barter, buy, contract, sell, or trade ideas, products, services, or work;

28. All rights to barter, buy, contract, sell, or trade any kind of asset, tool, item of value, time, property whatsoever without any requirement to apply for or obtain any government license, permit, certificate, or permission of any kind whatsoever;

29. All rights to create, invent, adopt, utilize, or promulgate any system or means of currency, private money, medium of exchange, coinage, barter, economic exchange, bookkeeping, record-keeping, and the like;

30. All rights to use any free, rented, leased, fixed, or mobile domicile, as though same were a permanent domicile; and to be free from requirement to apply for or obtain any government license or permission, permit and otherwise; and to be free from entry, intrusion, or surveillance, by any means, regardless of duration of lease period;

31. All signatures on all applications for and all value associated with all public addresses;

32. All signatures and seals;

33. All signatures on all applications for and all value associated with all licenses foreign and domestic;

34. All present and future retirement incomes, commissions, compensation, and the fruits of my labor, and rights to such incomes, commissions, compensation, and the fruits of my labor issuing from all accounts and trusts;

35. All applications, filings, correspondence, information, images, identifying marks, image licenses, travel documents, materials, permits, registrations, and records and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of any information and images contained therein, regardless of creator, method, location, process, or storage form, inter alia: all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, or transmitting said applications, filings, correspondence, information, images, identifying marks, image licenses, travel documents, materials, permits, registrations, records and records numbers, and the like;

36. All signatures on all applications for and all value associated with all library cards;

37. All credit, charge, and debit cards, mortgages, notes, applications, card numbers, and associated records and information;

38. All credit of DEBTOR;

39. All signatures on and all value associated with all traffic citations/tickets;

40. All signatures on and all value associated with all parking citations/tickets;

41. All value from all court cases and all judgments, past, present, and future, in any court whatsoever; and all bonds, orders, warrants, and other matters attached thereto or derived therefrom;

42. All precious metals, bullion, coins, jewelry, precious jewels, semi-precious stones, mounts; and any storage boxes, receptacles, and depositories within which said items are stored;

43. All bank accounts foreign and domestic, all brokerage accounts, stocks, bonds, certificates of deposit, drafts, futures, insurance policies, investment, securities, all retirement plan accounts, Individual Retirement Accounts, money market accounts, mutual funds, notes, options, puts, calls, pension plans, savings accounts, stocks, warrants, securities, benefits from trusts, 401Ks, and the like;

44. All accounts, deposits, escrow accounts, lotteries, overpayments, prepayments, prizes, rebates, refunds, returns, Treasury Direct Accounts, claimed and unclaimed funds; and all records and records numbers, correspondence, and

Deed Book 60487 Pg 703

information pertaining thereto or derived therefrom;

45. All stockpiles, collections, buildups, amassment, and accumulations, however small, of Federal Reserve Notes (FRNs), gold certificates, silver certificates; and all other types and kinds of cash, coins, currency, and money delivered into possession of Secured Party Creditor;

46. All drugs, herbs, medicine, medical supplies, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagating plants, and seeds; and all related storage facilities and supplies;

47. All fitness and/or sports equipment intended to increase vitality, fitness, and health; and whole food complexes, vitamin, mineral, and other supplements to the diet for the same health and fitness purposes; and all juicers, grinders, dehydrators, and storage and delivery devices or equipment;

48. All products of and for agriculture; and all equipment, inventories, supplies, contracts, and accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture;

49. All plants and shrubs, trees, fruits, vegetables, farm and garden produce, indoors and out, watering devices, fertilizers and fertilizing equipment, pots, collections of plants, e.g., bonsai, dry or live assortments of flowers and plants, or anything botanical;

50. All farm, lawn, and irrigation equipment, accessories, attachments, hand tools, implements, service equipment, parts, supplies, and storage sheds and contents;

51. All fuel, fuel tanks, containers, and involved or related delivery systems;

52. All metal-working, woodworking, and other such machinery; and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, tool boxes, work benches, shops, and facilities;

53. All camping, fishing, hunting, and sporting equipment; and all special clothing, materials, supplies, and baggage related thereto;

54. All storage units, safes, rifles, guns, bows, crossbows, other weapons, and related accessories; and the ammunition, reloading equipment and supplies, projectiles, and integral components thereof;

55. All radios, televisions, communication equipment, receivers, transceivers, transmitters, antennas, towers, etc.; and all ancillary equipment, supplies, computers, software programs, wiring, and related accoutrements and devices;

56. All power-generating machines or devices; and all storage, conditioning, control, distribution, wiring, and ancillary equipment pertaining to or attached thereto;

57. All devices, engines, fixtures, fans, plans needed for the production or storage of electrical energy;

58. All computers and computer systems and the information contained therein; as well as all ancillary equipment, printers, and data compression or encryption devices, processes, and processors;

59. All office and engineering equipment, furniture, ancillary equipment, drawings tools, electronic and paper files, and items related thereto;

60. All water wells and well-drilling equipment; and all ancillary equipment, chemicals, tools, and supplies;

61. All shipping, storing, and cargo containers, and all chassis, truck trailers, vans, and the contents thereof; whether on-site, in transit, or in storage anywhere;

62. All building materials and prefabricated buildings; and all components or materials pertaining thereto, before or during manufacture, transportation, storage, building, erection, or vacancy while awaiting occupancy thereof;

63. All communications and data; and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information;

64. All artwork and supplies, paintings, etchings, photographic art, lithographs, and serigraphs, etc.; and all frames and mounts pertaining to or affixed thereto;

65. All food; and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth, transport, and storage;

66. All construction machinery; and all ancillary equipment, fuels, fuel additives, supplies, materials, and service equipment pertaining thereto;

67. All medical, dental, optical, prescription, and insurance records, records numbers, and information contained in any such records or pertaining thereto;

68. The Last Will and Testament from any source;



Deed Book 60487 Pg 704
**CATHELENE ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

69.   All inheritances gotten or to be gotten;

70.   All wedding bands and rings, watches, and jewelry;

71.   All household goods and appliances, linen, wardrobe, toiletries, furniture, kitchen utensils, cutlery, tableware, cooking utensils, pottery, collectibles, collections, antiques, etc.;

72.   All musical instruments, whether new or old, including brass, woodwinds, percussion, strings, etc.;

73.   All children's toys, books, clothing, playthings, and possessions of any type or amount;

74.   All businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and the like, now owned or hereafter acquired; and all books and records thereof and therefrom; all income, commissions, compensation, and the fruits of my labor therefrom; and all accessories, accounts, equipment, information, inventory, money, spare parts, and computer software pertaining thereto;

75.   All signatures on all applications for social security numbers, and all value associated with all accounts, 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;

76.   All tax correspondence, filings, notices, coding, record numbers, all benefit from social security account # 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; and any information contained therein, wherever and however located, and no matter by whom said information was obtained, compiled, codified, recorded, stored, analyzed, processed, communicated, or utilized;

77.   All value associated with the private contract trust account number: ▇▇▇▇▇▇;

78.   All private, registered, bond/account numbers; and all bonds and notes tendered to any and all entities, including the Department of the Treasury, banks, creditors, corporations, etc;

79.   All rights, interest, and exclusive title in CERTIFICATE OF LIVE BIRTH FILE # 414-A0014630759, January 27, 1964, issued by NEW JERSEY DEPARTMENT OF HEALTH, OFFICE OF VITAL RECORDS, instilling the pledge represented by the same pignus, hypotheca, hereditaments, res, the energy and all products derived therefrom including, but not limited to all caps name CHARLTON CARLOS LESTER, CHARLTON LRSTER, CHARLTON C. LESTER, C. LESTER, or C.C.LESTER, or any other derivative thereof; and

80.   Any and all property not specifically listed, named, or specified by make, model, serial number, etc., is expressly herewith included as collateral of the Secured Party Creditor.

End of Attachment "A" – Property List

By: _____

Charlton Carlos Lester,
Secured Party Creditor

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK 60487 PG 197-704 this office this 24 day of FEB 20 22

CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk

not valid unless signed in RED ink

Deed Book 62038 Page 57
Filed and Recorded 08/05/2020 11:32:00 AM
2020-0252766
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 1663542869
0848497841

Return to:
Campbell & Brannon, LLC
5565 Glenridge Connector
Suite 350
Atlanta, Georgia 30342
(Return to JMC)

CLERK: Please cross reference to Deed Book
58019, page 634.
Grantor: Jade Eye 72 Trust

Tax Parcel 14F-0094-LL-019-3
2225 Wallace Road, Atlanta, GA

### AFFIDAVIT

STATE OF GEORGIA,
COUNTY OF FULTON.

Personally appeared before me, a notary public, J. Michael Campbell, who being duly sworn, deposes and states on oath as follows:

1.

My name is J. Michael Campbell and this Affidavit is recorded to provide notice to interested parties of the existence of a certain Order for Contempt and Sanctions entered 7/29/2020.

2.

I am aware that this affidavit will be relied upon by various buyers, lenders, lawyers, and title insurance companies concerning the title to the said property.

Witness the hand and seal of the undersigned on this 31st day of July, 2020.

_____ (SEAL)
J. Michael Campbell

Signed, sealed, and delivered in
the presence of:

_____
Witness

_____
Notary Public



Deed Book 62038 Page 58



**IT IS ORDERED as set forth below:**

**Date: July 29, 2020**

_James R. Sacca_

**James R. Sacca**
**U.S. Bankruptcy Court Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **CHAPTER 7 CASE** |
| **WEINSTOCK & SCAVO, P.C.,** | : | |
| | : | **NO. 12-80220** |
| Debtor. | : | |
| | : | |
| | : | |
| **WILLIAM J. LAYNG, JR., as chapter 7** | : | |
| **Trustee for the Estate of** | : | |
| **WEINSTOCK & SCAVO, P.C.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **ADVERSARY PROCEEDING** |
| | : | |
| | : | **NO. 19-05234** |
| v. | : | |
| | : | |
| **CHARLTON CARLOS LESTER, OTS, INC.,** | : | |
| **JADE EYE 72 TRUST, TIE RAY TRUST,** | : | |
| **BLACK ROYAL TRUST and** | : | |
| **BMS REALTY, LLC,** | : | |
| | : | |
| Defendants. | : | |

---

## ORDER FOR CONTEMPT
## AND FOR SANCTIONS AGAINST CO-DEFENDANTS BMS REALTY, LLC, JADE
## EYE 72 TRUST, BLACK ROYAL TRUST AND TIE RAY TRUST



This matter is before the Court on the *Plaintiff William J. Layng, Jr.'s Motion for Order of Contempt and for Sanctions Against Co-Defendants BMS Realty, LLC, Jade Eye 72 Trust, Black Royal Trust And Tie Ray Trust* filed July 3, 2020 [Doc. No. 35](the "Contempt Motion"). The Contempt Motion requests the Court find Co-Defendants BMS Realty, LLC ("BMS"), Jade Eye 72 Trust ("Jade Eye"), Tie Ray Trust ("Tie Ray") and Black Royal Trust ("Black Royal") to be in willful contempt for failure to comply with this Court's Orders as follows:

1) *Default Judgment in Favor of Plaintiff William J Layng, Jr., as Chapter 7 Trustee, Against Co-Defendants OTS, Inc. and BMS Realty, LLC* entered October 11, 2019 [Doc. No. 8](the "BMS Turnover Order"); and

2) *Default Judgment in Favor of Plaintiff William J Layng, Jr., as Chapter 7 Trustee, Against Co-Defendants Jade Eye 72 Trust, Tie Ray Trust and Black Royal Trust* entered May 27, 2020 [Doc. No. 33](the "Trusts Turnover Order").

The Contempt Motion seeks the entry of an Order transferring title to the 2225 Wallace Road, 1226 Byewood Lane, 1529 Bellflower Court and 1876 Wedgewood Drive properties, as identified in the Amended Complaint, to the bankruptcy estate for liquidation in satisfaction of the Lester Judgment and OTS Judgment, as identified in the Amended Complaint. The Court entered the BMS Turnover Order on October 11, 2019 and despite demand for compliance with the BMS Turnover Order made by the Trustee to BMS on October 21, 2019, BMS has failed to comply. The Court entered the Trusts Turnover Order on May 27, 2020 and despite demand for compliance with the Trusts Turnover Order made by the Trustee to Jade Eye, Tie Ray and Black Royal on June 1, 2020, Jade Eye, Tie Ray and Black Royal have failed to comply.

A hearing on the Contempt Motion was held on July 28, 2020, at which time no objections to the Contempt Motion were asserted. No objections having been filed and good cause having been shown for granting the relief requested in the Contempt Motion; it is hereby

Deed Book 62038 Page 60

ORDERED that the Contempt Motion is GRANTED; it is further

ORDERED that title to the 2225 Wallace Road, 1226 Byewood Lane, 1529

Bellflower Court and 1876 Wedgewood Drive properties, as identified in the Amended

Complaint and more specifically described on Exhibit "A" attached, is hereby transferred to

William J. Layng, Jr., as chapter 7 trustee for the estate of Weinstock & Scavo, P.C., for

liquidation in satisfaction of the Lester Judgment and OTS Judgment, as identified in the

Amended Complaint.


## END OF DOCUMENT

Prepared and presented by:

THEODORE N. STAPLETON, P.C.
/s/ Theodore N. Stapleton
Theodore N. Stapleton
Georgia Bar No. 675850
Attorneys for Plaintiff


Suite 100-B
2802 Paces Ferry Road, SE
Atlanta, GA 30339
Telephone: (770) 436-3334
tstaple@tstaple.com


## DISTRIBUTION LIST

Theodore N. Stapleton
Suite 100-B
2802 Paces Ferry Road, SE
Atlanta, GA 30339



Deed Book 62038 Page 61

Charlton Carlos Lester
3434 Hamlin Square, S.W.
Atlanta, GA 30331

Black Royal Trust
c/o Jermaine Bradley, as trustee
150 East Campbelltown Road
Fairburn, GA 30213

Jade Eye 72 Trust
c/o Jermaine Bradley, as trustee
150 East Campbelltown Road
Fairburn, GA 30213

Tie Ray Trust
c/o Michelle Jones, as trustee
4426 Hugh Howell Road
Suite B 554
Tucker, GA 30084

BMS Realty, LLC
c/o Regina S. Molden, Esq.
The Molden Law Firm
233 Peachtree Street NE
Suite 1245, Harris Tower
Atlanta, GA 30303



## EXHIBIT "A"

1) **KNOWN AS:   2225 WALLACE ROAD, ATLANTA, FULTON COUNTY, GEORGIA 30331**

**PROPERTY LEGAL DESCRIPTION:**
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:
BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

**PARCEL ID NO. 14F0094 LL0193**

**CROSS REFERENCE- DB- 58019; PG- 634; TITLE OWNER- JADE EYE 72 TRUST**

2) **KNOWN AS:  1226 BYEWOOD LANE, SW, ATLANTA, FULTON COUNTY, GEORGIA 30310**

**PROPERTY LEGAL DESCRIPTION:**
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 137 OF THE 146 DISTRICT, FULTON COUNTY, GEORGIA, OAKLAND PARK SUBDIVISION, AS PER PLAT RECORDED IN DEED BOOK 36323, PAGE 67, FULTON COUNTY, GEORGIA RECORDS, SAID PLAT BEING INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION, BEING IMPROVED PROPERTY KNOWN AS 1226 BYEWOOD LANE, SW, ATLANTA, GEORGIA 30310, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING HOUSES IN FULTON COUNTY, GEORGIA.



Deed Book 62038 Page 63
Cathelene Robinson
Clerk of Superior Court

PARCEL ID NO. 14 013700060381

CROSS REFERENCE- DB- 58625; PG- 231;  TITLE OWNER- TIE RAY TRUST

3) **KNOWN AS: 1529 BELLFLOWER COURT, STONE MOUNTAIN, DEKALB
COUNTY, GEORGIA 30088**

**PROPERTY LEGAL DESCRIPTION:**
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 29 OF THE
16TH DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 7, BLOCK Z, HIDDEN
HILLS SUBDIVISION, UNIT NINE, ACCORDING TO PLAT RECORDED IN PLAT BOOK
72, PAGE 32, DEKALB COUNTY RECORDS, WHICH PLAT IS INCORPORATED HEREIN
BY REFERENCE.

PARCEL ID NO.  16-029-06-007

CROSS REFERENCE- DB- 22304; PG- 176;  TITLE OWNER- BMS REALTY, LLC
CROSS REFERENCE- DB- 26544; PG- 397;  TITLE OWNER- BLACK ROYAL TRUST

4) **KNOWN AS:  1876 WEDGEWOOD DRIVE, STONE MOUNTAIN, DEKALB
COUNTY, GEORGIA 30088**

**PROPERTY LEGAL DESCRIPTION:**
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 5, 16TH
DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 12, BLOCK C, HIDDEN HILLS,
UNIT 17-A, AS PER PLAT RECORDED IN PLAT BOOK 92, PAGE 29, DEKALB COUNTY
RECORDS, WHICH REFERENCE IF MADE FOR THE PURPOSE OF INCORPORATING
THE SAME AS A PART HEREIN, AND BEING IMPROVED PROPERTY KNOWN AS 1876
WEDGEWOOD DRIVE, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING
HOUSES IN DEKALB COUNTY, GEORGIA.

PARCEL ID NO.  16-005-08-028

CROSS REFERENCE- DB- 22304; PG- 553;  TITLE OWNER- BMS REALTY, LLC

I hereby certify the within and foregoing to be a true, correct and complete copy of the
original that appears in    BK 62038 PG 57-63 in this office this 24 day of FEB 20 23
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____  Deputy Clerk
not valid unless signed in RED ink

Deed Book **62055** Pg **492**
Filed and Recorded Aug-07-2020 02:12pm
**2020-0254989**
**CATHELENE ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Jermaine W Bradley
c/o 150 Campbellton Street
Fairburn, Ga 30216

*Cross Reference BK 58019 pg 634*

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. **DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **JADE EYE 72 TRUST** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **150 CAMPBELLTON STREET** | **ATLANTA** | **GA** | **30213** | **USA** |

2. **DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. **SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| **Jermaine** | **Bradley** | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| **150 Campbellton Street** | **Fairburn** | **Ga** | **30213** | **USa** |

4. **COLLATERAL:** This financing statement covers the following collateral:

**THIS IS ACTUAL AND CONSTRUCTWE NOTICE all the Debtor's interested in the following property is hereby Accepted as collateral for securing contractual obligation in favor of the Secured Party This is a suit or action at Common Law and the value in controversy exceeds twenty (20) dollars. The controversy is not confined to the question of Title to Property or in relation to other property, but to Claimant's Common Law Claim for the acquisition, finance, repair, maintenance and improvements to the herein described property, and obligations of duties, wherein the Claiment demands the said controversy by determined by a Common Law Jury in a Court of Common Law and according to the Rules of Common Law. Common Law. Liens supersede ALL Liens, including, but not Limited to, Mortgage Leins, Statutory Liens, and Lis Pendens Liens. The value of the Secured Party's Claim in $4,170,000.00 United States Dollars this in the entry of the DEBTOR into the Commercial Registry and Public Notice of a Commercial Transaction. The Secured Party hereby secures all right, interest and title in said property.**

5. Check only if applicable and check only one box: Collateral is ☑ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ☑ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
**By:**

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS**

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

**9a. ORGANIZATION'S NAME**
### JADE EYE 72 TRUST

**OR**

**9b. INDIVIDUAL'S SURNAME**

**FIRST PERSONAL NAME**

**ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**10. DEBTOR'S NAME:** Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

**10a. ORGANIZATION'S NAME**

**OR**

**10b. INDIVIDUAL'S SURNAME**

**INDIVIDUAL'S FIRST PERSONAL NAME**

**INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX**

| **10c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|

**11.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (11a or 11b)

**11a. ORGANIZATION'S NAME**

**OR**

| **11b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |
|---|---|---|---|
| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |

**12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):**

This Common Law lien is can only be discharged by Claimant, or by Common Law Jury in a Court of Common Law and according to the rules of Common Law. It can not be discharged for One Hundred (100) years, and cannot be extinguished due to the death of Claimant, or by Claimant's heirs, assigns, or executors. This Common Law Lien is for repairs/ maintenance and improvements related to said Claimant, and performance of duty as related to all other assets due and payable in lawful money of the United States, a DOLLAR being described in the 1792 US Coinage Acts 371.25 grains of fine silver, or the equivalent of Gold, notes or other instruments acceptable to Claimant.

**13.** ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

**14. This FINANCING STATEMENT:**
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

**15.** Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):
**JADE EYE 72 TRUST**
**2225 Wallace Road**
**Atlanta, GA 30331**

**16. Description of real estate:**

**"SEE ATTACHMENT"**

**17. MISCELLANEOUS:**

International Association of Commercial Administrators (IACA)
**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)**

Deed Book 62055 Pg 494
**CATHELENE ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

## EXHIBIT "A"

THE LAND AND/OR PROPERTY REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:

**PHYSICAL ADRESS:** 2225 Wallace Road, Atlanta, GA 30331

PROPERTY LEGAL DESCRIPTION:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14th (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961. PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73. PAGE 70. FULTON COUNTY, GEORGIA RECORDS.

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK 62055 PG 492-495 this office this 24 day of FEB 20 CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk

not valid unless signed in RED ink

Recording Requested By:
Trust# RE199848455US-03
% P.O. Box 43846
Atlanta, Georgia dmm 602 1.3e (2)

And When Recorded Mail To:
Trust# RE199848455US-03
% P.O. Box 43846
Atlanta, Georgia dmm 602 1.3e (2)

Deed Book 64562 Pg 142
Filed and Recorded Sep-29-2021 01:58pm
2021-0308369
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

*Cross Reference BK48403 page 675*

# NOTICE OF CLAIM DEED

"This is actual constructive public notice by Grantor(s)[that he is]owner and holder of all right, title, and interest in 2225 Wallace Road, Atlanta, Georgia 30331 in the name of CHARLTON CARLOS LESTER, at 2225 Wallace Road, Atlanta, Georgia 30331, with the non-negotiable instrument **claim** number **RE 199848455 US-03** with all attachments and proceeds therefrom as being held in private.

If any information regarding this needs to be gleaned, please contact the Grantor(s) at the address above."

**WITNESS MY SIGNATURE** on this, the 27th day of September, in the year Two Thousand and Twenty One.

By Grantor:

Lester, Charlton Carlos, Grantor
**Private American citizen of the United States of America, privately
residing within a non-military occupied private estate, outside a
"Federal District" not subject to the jurisdiction of the "United States".**

## ACKNOWLEDGEMENT

On this 27th day of Sept. in the year Two Thousand and Twenty One, personally appeared before me, Laviette R. Alston, whose name is subscribed within **NOTICE OF CLAIM DEED** instrument and acknowledged to me that he executed the same.

Notary Public, Signature

Commission Expires:

LAVIETTE R ALSTON
NOTARY
PUBLIC
Mar 31, 2025
FULTON COUNTY
STATE OF GEORGIA

**NOTICE OF CLAIM DEED # RE 199 848 455 US-03**



Deed Book 64562 Pg 143

## Certificate of Title of Special Deposit REGISTERED MAIL#RE 199 848 455 US

### To All to Whom These Presents Shall Come:

I, :Lester, Charlton Carlos: , in my capacity as a private citizen of The United States of America, hereby certify that on the _____, day of September 2021; from within the State of GEORGIA County of FULTON, without the "United States," within a non-military occupied private estate, that I, the grantor/settlor, with intent and purpose, hereby deliver/ convey/ transfer legal title of all right title and interest of equitable asset title **RE 199 848 455 US** / **ASSET CREDIT VOUCHER No. RE 199 848 455 US** along with all of its special deposit as I do assign if any, attachment, derivations, **RE 000 000 000 US-003** thru and including **RE 000 000 000 US-999**, and did perform the Deed of Delivery via USPS Registered No. **RE 567251242 US** as evidenced by this original Certificate in trust and care of the appointee/trustee, Charlton Carlos Lester, TRUSTEE-CO-TRUSTEES et al, in care Trustee, at P.O Box 43846, Atlanta, GA 30336, Co-Trustee, Assistant, all successors and assigns, and it shall be binding upon him/her by its acceptance by the Trustee(s) in the absence of a valid disclaimer.

This legal title supersedes all previously issued legal titles of same by Charlton Carlos Lester.

Executed and Sealed this 27ᵗʰ , day of September, 2021 I set my seal below in execution of the above:

[seal]

:Lester, Charlton-Carlos: grantor/settler

Private Citizen of the United States of America

Private Witness 1

Private Citizen of the United States

Private Witness 2

Private Citizen of the United States

Lester, Charlton-Carlos: Private Citizen of the United States



*EXhibit A*

Deed Book 48403 Pg  675
Filed and Recorded Sep-30-2009 02:10pm
2009-0285032
Georgia Intangible Tax Paid $1,251.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

CROSS REFERENCE
DE Book 56794 Page 615

ASGN
DE Book 55740 Page 82

After Recording Return To:
CBC NATIONAL BANK

3010 ROYAL BOULEVARD SOUTH, SUITE 230

ALPHARETTA, GEORGIA 30022

RETURN TO
Hudnall Cohn Fyvolent & Shaver, P.C.
3471 Donaville Street
Duluth, GA 30098

_____[Space Above This Line For Recording Data]_____

## SECURITY DEED

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated  SEPTEMBER 25, 2009
together with all Riders to this document.
**(B)** "Borrower" is CHARLTON C. LESTER

Borrower is the grantor under this Security Instrument.
**(C)** "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888)679-MERS.
**(D)** "Lender" is CBC NATIONAL BANK

Lender is   A NATIONAL BANK                           organized and existing under the laws of
. Lender's address is  3010 ROYAL BOULEVARD
SOUTH, SUITE 230, ALPHARETTA, GEORGIA 30022
**(E)** "Note" means the promissory note signed by Borrower and dated   SEPTEMBER 25, 2009
The Note states that Borrower owes Lender  FOUR HUNDRED SEVENTEEN THOUSAND AND NO/100

Dollars (U.S. $  417,000.00              ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   OCTOBER 1, 2039
**(F)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)** "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider               ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider   ☒ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider           LEGAL ATTACHED
                    WAIVER OF BORROWER'S RIGHTS AND CLOSING ATTORNEY

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3011  1/01
UICAMERS.01-10/00    52065.15241                 Page 1 of 11



(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the       COUNTY      of      FULTON        :
                    [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

APN #: 14F0094LL019
which currently has the address of    2225 WALLACE ROAD SW
                                          [Street]

ATLANTA                , Georgia   30331      ("Property Address"):
  [City]                              [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.02-10/00    52065.15241                  Page 2 of 11                            Form 3011 1/01



Deed Book **48403** Pg 677

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note:

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMEKS.r3-10/00   520G5.15241                Page 5 of 11                Form 3011 1/01



Deed Book 64562 Pg 147

Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.



Deed Book 48403 Pg 679

Deed Book 44562 Pg 148

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.05-10/00   52065.15241                                 Page 5 of 11                                 Form 3011 1/01



Nm: ANDREW GUTIERREZ CertDocCpy-I CFN DE2010-0340362 ORB DE BK46682-PG0142 Pgs 4-12 Instr:SD OTHER Page:Main 34
Nm: LESTER CertDocCpy-I CFN DE2009-0285032 ORB DE BK48403-PG0675 Pgs 1-13 Instr:SD Page : 6 of 13

Document     Page 67 of 178

Deed Book 48403 Pg 680

Deed Book 64562 Pg 149

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the forgoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.06-10/00     62065.15241                    Page 6 of 11                    Form 3011 1/01



Deed Book 48403 Pg 681

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing. the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and. if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.07-10/00     52065.15241                      Page 7 of 11                              Form 3011 1/01

Deed Book 64562 Pg 151

made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

UICAMERS.05-10/00    $2065.15241

Page 8 of 11

Form 3011 1/01



Document        Page 70 of 178

Deed Book 152

Deed Book 64562 Pg

Deed Book **48403** Pg **683**

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.09-13/00        52065.15241                                    Page 9 of 11                                          Form 3011  1/01



Deed Book **48403** Pg **684**

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



Deed Book 64562 Pg 154

Deed Book **48403** Pg **685**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public

My Commission Expires: _____

_____ County

_____ (Seal)
CHARLTON C. LESTER                Borrower

_____ (Seal)
                                  Borrower

_____ (Seal)
                                  Borrower

_____ (Seal)
                                  Borrower

_____ (Seal)
                                  Borrower

_____ (Seal)
                                  Borrower

(Seal on notary: MARIANNE T. SHAVER, NOTARY, EXPIRES GEORGIA March 10, 2012, PUBLIC, DEKALB COUNTY)

_____ (Space Below This Line For Acknowledgment) _____

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UNGAMERS.11-10/00    52065.15241                    Page 11 of 11                    Form 3011 1/01



Deed Book **48403** Pg **686**

Deed Book **64562** Pg **155**

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.



Deed Book 64562 Pg 1541 156

Deed Book 48403 Pg 687
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

GEORGIA
GRANTOR: CHARLTON C. LESTER

LENDER: CBC NATIONAL BANK
DATE OF SECURITY DEED: SEPTEMBER 25, 2009

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered
in the presence of

_____ (SEAL)
-Grantor    CHARLTON C. LESTER

_____ (SEAL)
Notary Public    -Grantor

_____ (SEAL)
-Grantor

_____ (SEAL)
-Grantor

_____ (SEAL)
-Grantor

_____ (SEAL)
-Grantor

[Notary seal: MARIANNE T. SHAVER NOTARY PUBLIC GEORGIA DEKALB COUNTY EXPIRES March 10, 2012]

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the _____ [from above]

_____
Notary Public

_____
Closing Attorney

[Notary seal: KATHLEEN R. FERRARA NOTARY PUBLIC GEORGIA WALTON COUNTY Expires Oct 1, 2011]

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
CHARLTON C. LESTER

HP450257-10/08    52065.15241    WAIVER OF BORROWER'S RIGHTS (GEORGIA)

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK 48403 PG 685 in this office this 11th day of Sept 20 21
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink



*Exhibit A*

DE Book 57457 Page 15
**CROSS REFERENCE**

Return To:
Wachovia Mortgage
Corporation
1100 Corporate Center Drive.
Raleigh, NC 27607

Deed Book **45737** Pg **235**
Filed and Recorded Sep-24-2007 01:19pm
**2007-0274956**
Georgia Intangible Tax Paid $819.00
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia
**ASGN**
DE Book 55533 Page 517

Prepared By:
Wachovia Mortgage Corporation
1100 Corporate Center Drive
Raleigh, NC 27607

AFTER RECORDING RETURN TO:
MORRIS / HARDWICK / SCHNEIDER
418 LENOX POINTE
ATLANTA, GA 30324

[Space Above This Line For Recording Data]

## SECURITY DEED

MIN 100013700067606432

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated September 18, 2007 together with all Riders to this document.
**(B) "Borrower"** is Charlton C. Lester, Individual

Borrower is the grantor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Lester

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011 1/01

VMP®-6A(GA) (0005).02
Page 1 of 14          Initials:
VMP Mortgage Solutions, Inc.



Deed Book **45737** Pg **236**

**(D) "Lender"** is Wachovia Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of North Carolina
Lender's address is 1100 Corporate Center Drive, Raleigh, NC 27607

**(E) "Note"** means the promissory note signed by Borrower and dated September 18, 2007
The Note states that Borrower owes Lender Two Hundred Seventy Three Thousand
Dollars
(U.S. $ 273,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2037
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☒ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider   ☐ Biweekly Payment Rider   ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

 -8A(GA) (0005).02          Page 2 of 14          Initials:           Form 3011  1/01



Deed Book **45737** Pg **237**

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the   County

of   Fulton   :

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

See legal description attached hereto andmade a part hereof

Parcel ID Number:                                    which currently has the address of
3434 Hamlin Square                                                   [Street]
  Atlanta                              [City] , Georgia      30349      [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:

VMP-6A(GA) (0061.02)                 Page 3 of 14                 Form 3011 1/01



Deed Book 64562 Pg
160

Deed Book **45737** Pg **238**

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payment are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

 


in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the




VMP-6A(GA) (0005).02                    Page 6 of 14          Initials:             Form 3011  1/01



Deed Book 64562 Pg 162

Deed Book **45737** Pg **240**

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



VMP-6A(GA) (0008).02

Page 6 of 14

Initials

Form 3011 1/01



Deed Book 64562 Pg 163

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying



VMP-6A(GA) (0006).02                    Page 7 of 14          Initials:                    Form 3011 1/01



Deed Book **45737** Pg **242**

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials:

VMP-6A(GA) (0005).02          Page 8 of 14          Form 3011 1/01



Deed Book **64562** Pg **165**

Deed Book **45737** Pg **243**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

VMP-6A(GA) (00051.02                    Page 9 of 14            Initials:                    Form 3011 1/01



Deed Book 64562 Pg 166

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

�@D-6A(GA) (0005).02                   Page 10 of 14          Initials: _____          Form 3011 1/01



Deed Book 64562 Pg 167

Deed Book 45737 Pg 245

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

VMP-6A(GA) (0005).02          Page 11 of 14          Initials [signature]          Form 3011  1/01



Deed Book 64562 Pg  168

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.





VMP-6A(GA) (0005).02                    Page 12 of 14          Initials: _____          Form 3011 1/01



Deed Book **45737** Pg **247**

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



Deed Book **45737** Pg **248**

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
Charlton C. Lester        -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower


**STATE OF GEORGIA,**          Fulton          **County ss:**
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____                        County
Notary Public,
State of Georgia

Deed Book 64562 Ps 170

VMP-6A(GA) (0005).02          Page 14 of 14          Form 3011  1/01



Deed Book 45737 Pg 249

Deed Book 64562 Pg 171

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 18th day of September, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to Wachovia Mortgage Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 3434 Hamlin Square, Atlanta, GA 30349

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

(the "Declaration"). The Property is a part of a planned unit development known as Wellesley Estates

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Wolters Kluwer Financial Services          Page 1 of 3          Initials: 
VMP®-7R (0411).01



Deed Book 45737 Pg 250

Deed Book 64562 Pg 172

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP®-7R (0411).01    Page 2 of 3    Initials: _____    Form 3150 1/01



Deed Book 64562 Pg 173

Deed Book **45737** Pg **251**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
Charlton C. Lester                    -Borrower                                            -Borrower


_____ (Seal)          _____ (Seal)
                                      -Borrower                                            -Borrower


_____ (Seal)          _____ (Seal)
                                      -Borrower                                            -Borrower


_____ (Seal)          _____ (Seal)
                                      -Borrower                                            -Borrower


VMP®-7R (0411).01                    Page 3 of 3                    Form 3150 1/01



**Deed Book 45737 Pg 252**

# EXHIBIT A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 98 OF THE 14ff DISTRICT, FULTON COUNTY, GEORGIA, BEING LOT 309, WELLESLEY ESTATES, PHASE III-A, AS PER PLAT RECORDED IN PLAT BOOK 274, PAGES 30-33, FULTON COUNTY, GEORGIA RECORDS, SAID PLAT BEING INCORPORATED HEREIN AND MADE REFERENCE HERETO.

3434 Hamlin Square, Atlanta, GA, 30349
Legal Description

Exhibit A (Legal Description-Letter).rdw
LJ SR 09/28/06

LEN-0708005185
09/18/07 @ 10:27 AM



**GEORGIA**

Deed Book 45737 Pg 253
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

| | |
|---|---|
| **Grantor:** | Charlton C. Lester |
| **Lender:** | Wachovia Mortgage Corporation |
| **Date of Security Deed:** | September 18, 2007 |

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly: (1) acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the premises by nonjudicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof; (2) waives any and all rights which Grantor may have under the Constitution of the United States, the various provisions of the constitution for the several states, or by reason of any other applicable law to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided hereof; (3) acknowledges that Grantor has read this deed and specifically this paragraph and any and all questions regarding the legal effect of said deed and its provisions have been explained fully to Grantor and Grantor has been afforded an opportunity to consult with counsel of Grantor's choice prior to executing this deed; (4) acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained-for loan transaction; and (5) agrees that the provisions hereof are incorporated into and made a part of the Security Deed.

Read and agreed by Grantor:

Signed, sealed and delivered in the presence of:

Borrower(s)

Witness

Charlton C. Lester

Notary Public
My Commission Expires: 1/11/10

JENNIFER L. LEHR
NOTARY
My Comm. Exp.
January 11, 2010.
PUBLIC
COBB COUNTY

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under the power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Waiver of Borrower's Rights".

Based on said review with and explanation to the Borrower(s) it is my opinion that borrower(s) knowingly, intentionally and willingly executed the Waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

TAMMY TOAL
NOTARY
EXPIRES
GEORGIA
3-10
COBB COUNTY
PUBLIC

**Morris|Hardwick|Schneider, LLC**

Closing Attorney

Notary Public
My Commission Expires:

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

DEED BOOK 64562 Pg 175
**CATHELENE ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

Charlton C. Lester

Cls. On. Waiver of Borrower's Rights & CAA.ndw
as 7.9.2007

LEN-0708003185
04/18/07 @ 10:29:AM

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in E. BK 45737 PG 253 in this office this 21 day of Oct 2021.
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA
By Bonnie Cowthur Deputy Clerk
not valid unless signed in RED ink

SUPERIOR COURT
FULTON COUNTY

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in E BK 64562 PG 142-176 this office this 24 day of Feb 20 22
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA
By _____ Deputy Clerk
not valid unless signed in RED ink



**Recording Requested By:**
Trust# RE199848455US-04
% P.O. Box 43846
Atlanta, Georgia dmm 602 1.3e (2)

**And When Recorded Mail To:**
Trust# RE199848455US-04
% P.O. Box 43846
Atlanta, Georgia dmm 602 1.3e (2)

Deed Book 64562 Pg 176
Filed and Recorded Sep-29-2021 01:58PM
2021-0308370
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

*Cross Reference BK48403 page 688*

# NOTICE OF CLAIM DEED

"This is actual constructive public notice by Grantor(s)[that he is]owner and holder of all right, title, and interest in Fulton County Magistrate Court, Case no. 20-ED-168758 in the name of CHARLTON CARLOS LESTER, at 3434 Hamlin Square, Atlanta, Georgia 30349, with the non-negotiable instrument **claim** number **RE 199848455 US-04** with all attachments and proceeds therefrom as being held in private.

If any information regarding this needs to be gleaned, please contact the Grantor(s) at the address above."

**WITNESS MY SIGNATURE** on this, the 2 day of September, in the year Two Thousand and Twenty One.

By Grantor: _____

==============================================
Lester, Charlton Carlos, Grantor
**Private American citizen of the United States of America, privately
residing within a non-military occupied private estate, outside a
"Federal District" not subject to the jurisdiction of the "United States".**

## ACKNOWLEDGEMENT

On this 27th day of Sept. in the year Two, Thousand and Twenty One, personally appeared before me, *Lauiette L Alston*, whose name is subscribed within **NOTICE OF CLAIM DEED** instrument and acknowledged to me that he executed the same.

_____
Notary Public, Signature

LAVIETTE R ALSTON
NOTARY PUBLIC
Mar 31, 2025
FULTON COUNTY
STATE OF GEORGIA

Commission Expires:



**NOTICE OF CLAIM DEED # RE 199 848 455 US-04**

Deed Book 64562 Pg 177

### Certificate of Title of Special Deposit REGISTERED MAIL#RE 199 848 455 US

**To All to Whom These Presents Shall Come:**

I, :Lester, Charlton Carlos: , in my capacity as a private citizen of The United States of America, hereby certify that on the _____, day of September 2021; from within the State of GEORGIA County of FULTON, without the"United States," within a non-military occupied private estate, that I, the grantor/settlor, with intent and purpose, hereby deliver/ convey/ transfer legal title of all right title and interest of equitable asset title **RE 199 848 455 US** / **ASSET CREDIT VOUCHER No. RE 199 848 455 US** along with all of its special deposit as I do assign if any, attachment, derivations, **RE 000 000 000 US-004** thru and including **RE 000 000 000 US-999**, and did perform the Deed of Delivery via USPS Registered No. **RE 567251242 US** as evidenced by this original Certificate in trust and care of the appointee/trustee, Charlton Carlos Lester, TRUSTEE-CO-TRUSTEES et al, in care Trustee, at P.O Box 43846, Atlanta, GA 30336, Co-Trustee, Assistant, all successors and assigns, and it shall be binding upon him/her by its acceptance by the Trustee(s) in the absence of a valid disclaimer.

This legal title supersedes all previously issued legal titles of same by Charlton Carlos Lester.

Executed and Sealed this __27ᵗᵏ__, day of September, 2021 I set my seal below in execution of the above:

:Lester, Charlton-Carlos: grantor/settler
Private Citizen of the United States of America

Private Witness 1

Private Citizen of the United States

Private Witness 2

Private Citizen of the United States

Lester, Charlton-Carlos: Private Citizen of the United States



Exhibit A

Deed Book 48403 Pg 688
Filed and Recorded Sep-30-2009 02:10pm
2009—0285033
Georgia Intangible Tax Paid $352.50
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

WHEN RECORDED MAIL TO:
RBC Bank (USA)
ATTN: Jeri Taylor
P.O. Box 500
Rocky Mount, NC 27802

RETURN TO
Hudnall Cohn Pyvolent & Shaver, P.C.
3471 Donaville Street
Duluth, GA 30096

CRD 90492

## SECURITY DEED

**MAXIMUM LIEN.** The lien of this Security Deed shall not exceed at any one time $117,500.00.

THIS SECURITY DEED dated September 25, 2009, is made and executed between Charlton C Lester, whose address is 3434 Hamlin Square, Atlanta, GA 30331 (referred to below as "Grantor") and RBC Bank (USA), whose address is Lending Service Center, P.O. Box 1220, Rocky Mount, NC 27802 (referred to below as "Lender").

GRANT OF SECURITY DEED. FOR AND IN CONSIDERATION of the financial accommodations to Grantor by Lender resulting in the obligation as hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender all of Grantor's right, title, and interest in and to the following described real property: The Real Property is located in Fulton County, State of Georgia and is described as follows:

See Exhibit A, which is attached to this Security Deed and made a part of this Security Deed as if fully set forth herein.

TOGETHER WITH ANY AND ALL of the following: (i) all buildings, structures and improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto; (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any-wise appertaining thereto and the reversion and reversions, remainder or remainders thereof; (iii) all Rents accruing therefrom, whether now or hereafter due; (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any part of the buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon; (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof; (vi) all estates, rights, title and interest therein, or in any part or parcel thereof; (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

The Real Property or its address is commonly known as 2225 Wallace Rd SW, Atlanta, GA 30331.

REVOLVING LINE OF CREDIT. This Security Deed secures the indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor up to the maximum principal indebtedness of $117,500.00 so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Security Deed secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance. The maturity date of the Credit Agreement is October 10, 2029. The initial advance under the terms of the Credit Agreement is to be applied toward the purchase of the Property.

THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS SECURITY DEED. IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80 AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF SEVEN (7) YEARS FROM THE MATURITY DATE OF THE DEBT OR DEBTS SECURED BY THIS SECURITY DEED. HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE. THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:



Deed Book 64562 Pg: 179

Deed Book **48403** Pg **689**

## SECURITY DEED
### (Continued)

Page 2

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Security Deed, Grantor shall pay to Lender all amounts secured by this Security Deed as they become due and shall strictly perform all of Grantor's obligations under this Security Deed and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Deed. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Deed or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Security Deed, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Deed and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Security Deed.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Security Deed upon the sale or transfer, without Lender's prior written consent, of all or any part of the Property, or any interest in the Property. A "sale or transfer" means the conveyance of Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Georgia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Security Deed:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work




Deed Book **48403** Pg **690**

## SECURITY DEED
### (Continued)

Page 3

done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Security Deed, except for the Existing Indebtedness referred to in this Security Deed or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Security Deed:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Security Deed. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Security Deed, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Security Deed, to the extent compliance with the terms of this Security Deed would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Security Deed for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Security Deed also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.



181

Deed Book 64562 Pg

Deed Book 48403 Pg  691

## SECURITY DEED
### (Continued)

Page 4

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Security Deed:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Security Deed, and (b) Grantor has the full right, power, and authority to execute and deliver this Security Deed to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Security Deed, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Security Deed shall survive the execution and delivery of this Security Deed, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Security Deed:

**Existing Lien.** The security interest arising under this Security Deed securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any security deed, mortgage, deed of trust, or other security agreement which has priority over this Security Deed by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**Assignment of Proceeds.** Grantor hereby transfers and assigns to Lender any and all proceeds, in excess of the amount required to satisfy the Existing Indebtedness, which may be or become payable by reason of foreclosure under the Existing Indebtedness. Grantor further authorizes, directs and instructs that any and all such proceeds be paid directly to Lender and not to Grantor, up to the full extent required to satisfy the Indebtedness, and Grantor hereby releases and relinquishes any and all right, title, interest and claims in and to such proceeds to that extent. The term "foreclosure" as used in this paragraph shall mean or include, without limitation, foreclosure of all or any part of the Property by exercise of any power of sale contained in the Existing Indebtedness, judicial foreclosure, conveyance in lieu of foreclosure, or other means.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Security Deed:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable attorneys' fees and costs and expenses, including court costs that are incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Security Deed or upon all or any part of the Indebtedness secured by this Security Deed; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Security Deed; (3) a tax on this type of Security Deed chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.



Deed Book 48403 Pg 692

Deed Book 64562 Pg 182

## SECURITY DEED
### (Continued)

Page 5

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Security Deed as a security agreement are a part of this Security Deed:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Security Deed, and the Related Documents, and (2) the liens and security interests created by this Security Deed on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Security Deed if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**LENDER'S REMEDIES AND POWER OF SALE.** Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.** Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.** Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.** Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the Property or Lender's interest in the Property.

**Other Remedies.** Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.




Deed Book **48403** Pg **693**

Deed Book 64562 Pg 183

## SECURITY DEED
### (Continued)

Page 6

**Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.** With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.** Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over. All of Lender's rights and remedies will be cumulative and may be exercised alone or together.

**Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed. All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed. Any person may change his or her address for notices under this Security Deed by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**ANTI-MONEY LAUNDERING AND ANTI-TERRORISM.** Grantor represents, warrants and covenants to Bank as follows: (1) Grantor (a) is not and shall not become a person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) does not engage in and shall not engage in any dealings or transactions prohibited by Section 2 of such executive order, and is not and shall not otherwise become associated with any such person in any manner violative of Section 2, (c) is not and shall not become a person on the list of Specially Designated Nationals and Blocked Persons, and (d) is not and shall not become subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control




## SECURITY DEED
### (Continued)

Page 7

regulation or executive order; (2) Grantor is and shall remain in compliance, in all material respects, with (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act of 2001); and (3) Grantor has not and shall not use all or any part of the proceeds, advances or other amounts or sums constituting or evidenced by the Obligations, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

**DEED TO SECURE DEBT.** This Security Deed is a "deed to secure debt" made in compliance with O.C.G.A. 44-14-60 et seq. and this conveyance is not a mortgage and shall not be held to be a mortgage. The grant of Grantor's right, title and interest as set forth herein is IN FEE SIMPLE .

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** What is written in this Security Deed and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Security Deed. To be effective, any change or amendment to this Security Deed must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

**Governing Law.** This Security Deed will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Georgia without regard to its conflicts of law provisions. This Security Deed has been accepted by Lender in the State of Georgia.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Security Deed unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Security Deed. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Security Deed is not valid or should not be enforced, that fact by itself will not mean that the rest of this Security Deed will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Security Deed even if a provision of this Security Deed may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1) any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the Indebtedness, or any part of the Indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**DEFINITIONS.** The following words shall have the following meanings when used in this Security Deed:

**Borrower.** The word "Borrower" means Charlton C Lester and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated September 25, 2009, **with credit limit of $117,500.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is October 10, 2029. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund





Deed Book 48403 Pg 695

Deed Book 64562 Pg 185

**SECURITY DEED**
**(Continued)**

Page 8

Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Security Deed.

**Grantor.** The word "Grantor" means Charlton C Lester.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

**Lender.** The word "Lender" means RBC Bank (USA), its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Deed.** The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provision relating to the Personal Property and the Rents.

IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and delivered in the presence of:

GRANTOR:

X _____  (Seal)
Unofficial Witness

X _____
Charlton C Lester

Notary Public, _____

(NOTARY SEAL)

My Commission expires: _____

MARIANNE T. SHAVER
NOTARY PUBLIC
EXPIRES
GEORGIA
March 10, 2012
DEKALB COUNTY



Deed Book 44562 Pg 186

Deed Book **48403** Pg **696**

## SECURITY DEED
### (Continued)

Page 9

LASER PRO Lending, Ver. 5.46.00.003   Copr. Harland Financial Solutions, Inc. 1997, 2009.     All Rights Reserved.    - GA
C:\LASERPRO\CFI\LPL\G03.FC  TR-133093 PR-54



Deed Book **48403** Pg **697**

Deed Book 64562 Pg 187

### EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105; RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

---

This Deed to Secure Debt is made subject to a prior Deed to Secure Debt from **CARLTON C. LESTER** to **CBC NATIONAL BANK** dated September 26, 2009, recorded in Deed Book _____ Page _____, FULTON County, Georgia Records; securing an original principal sum of $417000.00.

Any default in the performance by Grantor of any of the covenants of said prior Security Deed or Note evidencing the indebtedness secured thereby shall be construed as a default under the terms of this Deed to Secure Debt by reason of which Grantee may declare the entire indebtedness secured hereby due and payable at once.



Deed Book **48403** Pg    698

Deed Book 64562 Pg 188

**WHEN RECORDED MAIL TO:**
RBC Bank (USA)
ATTN: Jeff Taylor
P.O. Box 500
Rocky Mount, NC 27802

# WAIVER OF GRANTOR'S RIGHTS

**GRANTOR:** Charlton C Lester

**LENDER:** RBC Bank (USA)

**DATE OF SECURITY DEED:** September 25, 2009

**PROPERTY DESCRIPTION:** Located in: Fulton County, State of Georgia and is described as follows:

See Exhibit A, which is attached to this Waiver and made a part of this Waiver as if fully set forth herein.

The Real Property or its address is commonly known as 2225 Wallace Rd SW, Atlanta, GA 30331.

**BY EXECUTION OF THIS PARAGRAPH, EACH GRANTOR EXPRESSLY:** (A) Acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the property by non-judicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions of the Security Deed; (B) Waives any and all rights which each Grantor may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several States, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided in the Security Deed; (C) Acknowledges that each Grantor has read the Security Deed and specifically that paragraph relating to the foreclosure provisions, and any and all questions regarding the legal effect of the Security Deed and its provisions have been explained fully to each Grantor and each Grantor has been afforded an opportunity to consult with counsel prior to executing the Security Deed; (D) Acknowledges that all waivers of the aforesaid rights of each Grantor have been made knowingly, intentionally and willingly by each Grantor as part of a bargained for loan transaction; and (E) Agrees that the provisions of this Waiver of Grantor's Rights are incorporated into and made a part of the Security Deed.

**IN WITNESS WHEREOF, THIS WAIVER HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS WAIVER IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS WAIVER IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

Signed, Sealed and Delivered in the presence of:

X _____
Unofficial Witness

Notary Public, _____

(NOTARY SEAL) MARIANNE T. SHAW
NOTARY
GEORGIA
EXPIRES
March 10, 2012
DEKALB CO.

My Commission expires: _____

**GRANTOR:**

X _____ (Seal)
Charlton C Lester

LASER PRO Lending, Ver. 5.46.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2009.    All Rights Reserved.    - GA    L:\CFI\LPL\G03G.FC    TR-133093 PR-54



Deed Book 48403 Pg 699

**WHEN RECORDED MAIL TO:**
RBC Bank (USA)
ATTN: Jeff Taylor
P.O. Box 500
Rocky Mount, NC 27802

## CLOSING ATTORNEY'S AFFIDAVIT

**GRANTOR:** Charlton C Lester

**LENDER:** RBC Bank (USA)

**DATE OF SECURITY DEED:** September 25, 2009

**PROPERTY DESCRIPTION:** Located in: Fulton County, State of Georgia and is described as follows:

See Exhibit A, which is attached to this Affidavit and made a part of this Affidavit as if fully set forth herein.

The Real Property or its address is commonly known as 2225 Wallace Rd SW, Atlanta, GA 30331.

BEFORE THE UNDERSIGNED ATTESTING OFFICER personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan but prior to the execution of the Security Deed and Waiver of Grantor's Rights by Charlton C Lester ("Grantor"), I reviewed with and explained to Grantor the terms and provisions of the Security Deed and particularly the provisions thereof authorizing Lender to sell the secured Property by a nonjudicial foreclosure under a power of sale, together with the Waiver of Grantor's Rights, and informed Grantor of Grantor's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Grantor of Grantor's rights. After the review with and explanation to Grantor, Grantor executed the Security Deed and Waiver of Grantor's Rights.

Based on the review with and explanation to Grantor, it is my opinion that Grantor knowingly, intentionally and willingly executed the waiver of Grantor's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

IN WITNESS WHEREOF, THIS AFFIDAVIT HAS BEEN SIGNED AND SEALED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.

X_____ (SEAL)
Closing Attorney

SWORN TO AND SUBSCRIBED before me this 25th day of Sept, 2009



Case 21-65152-jrs Doc 12 Filed 03/03/22 Entered 03/01/22 14:20:54 Desc Main
Document Page 108 of 178

Deed Book 48403 Pg 700
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

## CLOSING ATTORNEY'S AFFIDAVIT
### (Continued)

Page 2

LASER PRO Lending, Ver. 5.46.00.003   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - GA
C:\LASERPRO\CFI\LPL\G03H.FC  TR-133093  PR-64

Deed Book 64562 Pg 190
**CATHELENE ROBINSON**
Clerk of Superior Court
Fulton County, Georgia

I hereby certify the within and foregoing to be a true, correct and complete copy of the
original that appears in DE BK IBH 03 PG 165   in this office this 30 day of Sept 2021
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink

I hereby certify the within and foregoing to be a true, correct and complete copy of the
original that appears in DE BK 4562 PG 176 180 in this office this 24th day of Feb 20 22
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink



Deed Book 65215 Page 612
Filed and Recorded 02/02/2022 09:08:00 AM
2022-0022747
Real Estate Transfer Tax $830.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 1663542869
0848497841

Please return to:
CAMPBELL & BRANNON, L.L.C. ("CB")
5565 Glenridge Connector, Suite 350
Atlanta, GA 30342
G212633DM

Tax Parcel ID 14F0094 LL0193
Transfer Tax $830.00

STATE OF GEORGIA

## TRUSTEE'S DEED OF REAL ESTATE

THIS INDENTURE made this **1st** day of February in the year 2022, between **WILLIAM J. LAYNG, JR. AS AND ONLY AS CHAPTER 7 TRUSTEE IN THE BANKRUPTCY ESTATE OF WEINSTOCK & SCAVO, P.C.** Debtors, in a case in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, under Case No. 12-80220-JRS filed on December 4, 2012 (hereinafter called "Grantor") and **HAROLD RUBEN MADDOX** (hereinafter called "Grantee").

Grantor, as owner of record and pursuant to his power as Trustee, as set forth in the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines and by virtue of the power and authority given in and by that Order (the "Sale Order") entered upon the Trustee's Motion to Sell Property Pursuant to 11 U.S.C. 363 (b), which Sale Order was entered by the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division on January 10, 2022, a copy of which is attached as Exhibit "B" and in consideration of TEN DOLLARS ($10.00), lawful money of the United States paid by the Grantee, receipt whereof is hereby acknowledged, and other good and valuable consideration, does hereby grant, bargain, sell, convey and release unto Grantee, its heirs and assigns forever:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA AND BEING MORE PARTICULARLY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO.

Together with the appurtenances and all of the estate which the said **WEINSTOCK & SCAVO, P.C.** the Debtors, had in said premises at the time of the filing of his Involuntary Petition for Relief in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, and also the estate therein which the Grantor had or has power to convey or dispose of as Trustee in Bankruptcy for said **WEINSTOSCK & SCAVO, P.C**, the Debtors, pursuant to the Sale Order (collectively the "Property").

**TO HAVE AND TO HOLD** the Property herein granted unto the Grantee, its heirs and assigns forever.

IN WITNESS WHEREOF, Grantor herein has hereunto set hand and seal, the day and year first above written.

Signed, sealed and delivered in the presence of:

GRANTOR

_____ (Seal)
Witness

**WILLIAM J. LAYNG, JR. as and only**
**As Chapter 7 Trustee in the Bankruptcy Estate of**
**WEINSTOCK & SCAVO, P.C.**

Notary Public
My Commission Expires: [Attach Notary Seal]

ANDREW GRATTAN
NOTARY PUBLIC
EXPIRES
GEORGIA
August 31, 2024
DEKALB COUNTY



Deed Book 65215 Page 613

**EXHIBIT A**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.



EXHIBIT "B"

Case 12-80220-jrs   Doc 239   Filed 01/10/22   Entered 01/10/22 14:41:00   Desc Main
Document      Page 1 of 5

IT IS ORDERED as set forth below:

Date: January 10, 2022

_James R. Sacca_
**James R. Sacca**
**U.S. Bankruptcy Court Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | **CHAPTER 7** |
| **WEINSTOCK & SCAVO, P.C.,** | : | **CASE NO. 12-80220-jrs** |
| Debtor. | : | **JUDGE SACCA** |

---

**ORDER GRANTING MOTION TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND TO PAY REAL ESTATE COMMISSIONS**

The Trustee's *Motion to Sell Property of the Estate Free and Clear of Liens, Claims and Encumbrances and to Pay Real Estate Commissions* was filed December 2, 2021 in the above referenced case (the "Wallace Sale Motion")[Doc. No. 234]. A hearing was held on the Wallace Sale Motion on January 5, 2022 at which time appearances were made by William J. Layng, Jr., as chapter 7 trustee, Theodore N. Stapleton, attorney for the trustee, Tony Money, the real estate agent for the estate, and Charlton Carlos Lester ("Lester"). Lester filed the only objection to the Wallace Sale Motion and asserted his objections at the hearing. Mr. Money testified to his



Deed Book 65215 Page 615

extensive experience in the real estate industry, his marketing efforts, the lack of any relationships between the Trustee and the proposed purchasers and his opinion that the offers reflected in the Maddox Purchase Agreement and the King/Peoples Purchase Agreement, as identified in the Wallace Sale Motion, represent the highest and best offers for purchase of the Property.[1]  The Court overruled all objections asserted at the hearing and based upon the evidence presented, arguments of counsel, and all pleadings of record in the case; it is hereby

**ORDERED THAT:**

    1)    The Wallace Sale Motion is **GRANTED** as set forth herein;

    2)    The transactions contemplated in the Wallace Sale Motion and this Order are undertaken by the Purchaser in good faith, as that term is used in Section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Property shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Property and is entitled to all the protections afforded by Section 363(m) of the Bankruptcy Code;

    3)    Under Fed. R. Bankr. P. 6004(h), this Order shall be effective and enforceable immediately upon entry, and its provisions shall be self-executing. In the absence of any person or entity obtaining a stay pending appeal, Trustee and Purchaser are free to close the sale of the Property at any time, at which time the gross sales proceeds shall be paid to Trustee pursuant to this Order, and those disbursements requested by Trustee in the Sale Motion are authorized to be made;

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Wallace Sale Motion.



4)       The net sale proceeds after payment of all customary closing costs and fees including applicable real estate taxes, the four percent (4%) commission on the sale will be split 3%-1% between RE/MAX Around Atlanta Realty c/o Tony Money, representing the estate as seller, and Compass c/o Gabrielle Maddox, representing Maddox as buyer, or alternatively in the event Maddox Purchase Agreement does not close, the six percent (6%) commission to be split 3%-3% between RE/MAX Around Atlanta Realty c/o Tony Money, representing the estate as seller, and Keller Williams Realty Atlanta Partners c/o Kyera Perry, representing King/Peoples as the buyers, the commissions and costs of sale be paid at closing, and Mr. Money's costs to secure the Property, will be paid into the Trustee's escrow account (the "Escrow Account Funds") subject to any and all claims, interests, and rights of creditors and other interested parties in this case which shall attach to the Escrow Account Funds in the same validity, priority and extent therein which exists as of today and not disbursed without further order of this Court; and

5)       The Trustee is authorized to execute all documents necessary to effectuate the purchase/sale transaction.

**[END OF DOCUMENT]**

Prepared and presented by:

THEODORE N. STAPLETON, P.C.
*/s/ Theodore N. Stapleton*
Theodore N. Stapleton
Georgia Bar No. 675850
Attorneys for Trustee

Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339
Telephone: (770) 436-3334
tstaple@tstaple.com



Case 12-80220-jrs   Doc 239   Filed 01/10/22   Entered 01/10/22 14:41:00   Desc Main
Document      Page 4 of 5

### DISTRIBUTION LIST

United States Trustee
362 Richard Russell Building
75 Spring Street, S.W.
Atlanta, Georgia 30303

Theodore N. Stapleton, Esq.
Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339

United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Lisa Kaplan, Esq,
Rubin Lublin LLC
3145 Avalon Ridge Place
Suite 100
Peachtree Corners, GA 30071

Charlton C. Lester
PO Box 43846
Atlanta, GA 30336

Charlton C. Lester
PO Box 492289
Atlanta, GA 30349

Charlton C. Lester
2864 Georgian Dr. West
Chamblee, GA  30341-4858

Vivieon K. Jones
Assistant United States Attorney
United States Attorney's Office
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta, GA 30303



Deed Book 65215 Page 618
CATHELENE ROBINSON
Clerk of Superior Court

Case 12-80220-jrs    Doc 239    Filed 01/10/22    Entered 01/10/22 14:41:00    Desc Main
Document    Page 5 of 5

Internal Revenue Service
PO Box 7346
2970 Market Street
Philadelphia, PA 19104-5002

Charlton Carlos Lester
3434 Hamlin Square, S.W.
Atlanta, GA 30331

US Bank Trust National Association,
not in its individual capacity but soley
as Owner Trustee for VRMTG Asset Trust
888 7th Avenue, 10th Floor
New York, NY 10019

Jermaine Bradley
150 Campbellton Street
Fairburn, GA 30213

Jermaine Bradley
150 Campbellton Road
Fairburn, GA 30213

RBC Bank (USA)
c/o Lending Service Center
PO Box 1220
Rocky Mount, NC 27802

PNC Bank, National Association
Corporation Service Company
2 Sun Court, Suite 400
Peachtree Corners, GA 30092

RBC Bank (USA)
W. James Westlake, CEO
301 Fayetteville Street
Suite 2100
Raleigh, NC 27601

I hereby certify the within and foregoing to be a true, correct and complete copy of the
original that appears in DE  BK 65215  PG 612-616 in this office this 14th day of Feb  20 22
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____  Deputy Clerk
not valid unless signed in RED ink

Deed Book 58019 Pg 639
Filed and Recorded Oct-16-2017 08:46am
2017-0303848
Real Estate Transfer Tax $0.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Jermaine Bradley
150 East Campbellton Road
Fairburn, GA 30213

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
| JADE EYE 72 TRUST | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2225 WALLACE ROAD | ATLANTA | GA | 30331 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
| | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Bradley | Jermaine | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 150 East Campbellton Road | Fairburn | GA | 30213 | |

4. COLLATERAL: This financing statement covers the following collateral:
THIS IS ACTUAL AND CONSTRUCTWE NOTICE all the Debtor's interested in the following property is hereby
Accepted as collateral for securing contractual obligation in favor of the Secured Party This is a suit or action at
Common Law and the value in controversy exceeds twenty (20) dollars. The controversy is not confined to the question
of Title to Property or in relation to other property, but to Claimant's Common Law Claim for the acquisition, finance,
repair, maintenance and improvements to the herein described property, and obligations of duties, wherein the Claiment
demands the  said controversy be determined by a Common Law Jury in a Court of Common Law and according to the
Rules of Common Law. Common Law. Liens supersede ALL Liens, including, but not Limited to, Mortgage Leins, Statutory
Liens, and Lis Pendens Liens. The value of the Secured Party's Claim is $3,000,000.00 United States Dollars this in the entry
of the DEBTOR into the Commercial Registry and Public Notice of a Commercial Transaction. The Secured Party hereby
secures all right, interest and title in said property.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

Deed Book 58019 Pg 640
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, Georgia

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
**JADE EYE 72 TRUST**

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
**This Common Law lien is can only be discharged by Claimant, or by Common Law Jury in a Court of Common Law and according to the rules of Common Law. It can not be discharged for One Hundred (100) years, and cannot be extinguished due to the death of Claimant, or by Claimant's heirs, assigns, or executors. This Common Law Lien is for repairs/ maintenance and improvements related to said Claimant, and performance of duty as related to all other assets due and payable in lawful money of the United States, a DOLLAR being described in the 1792 US Coinage Acts 371.25 grains of fine silver, or the equivalent of Gold, notes or other instruments acceptable to Claimant.**

13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):
**JADE EYE 72 TRUST
2225 Wallace Road
Atlanta, GA 30331**

16. Description of real estate:
**all that tract or parcel of land lying and being in land lots 94 and 105 of the 14th (ff) district of Fulton County, Georgia, and being more particularly described as follows: Beginning at an iron pin located on the southwesterly side of wallace road at the intersection of the southwest side wallace rjoad and the east line of land lot 105; running thence northwesterly along the southwesterly side of wallace rjoad, fifty-one and six-tenths (51.6) feed to an iron pin; running thence southwesterly,**

17. MISCELLANEOUS:
**Secured Parties are sovereign and operating in Common Law and without the United States also in Common Law**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE BK58019 PG639-640 in this office this 24th day of Feb 2022
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _Judee Bazin_ Deputy Clerk
not valid unless signed in RED ink



Deed Book 48403 Pg 675
Filed and Recorded Sep-30-2009 02:10pm
2009-0285032
Georgia Intangible Tax Paid $1,251.00
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

After Recording Return To:
CBC NATIONAL BANK

3010 ROYAL BOULEVARD SOUTH, SUITE 230

ALPHARETTA, GEORGIA 30022

CROSS REFERENCE
DE Book 56794 Page 615

ASGN
DE Book 55740 Page 82

RETURN TO
Hudnall Cohn Fyvolent & Shaver, P.C.
3471 Donaville Street
Duluth, GA 30096

[Space Above This Line For Recording Data]

## SECURITY DEED

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    SEPTEMBER 25, 2009
together with all Riders to this document.
(B) "Borrower" is CHARLTON C. LESTER

Borrower is the grantor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888)679-MERS.
(D) "Lender" is CBC NATIONAL BANK

Lender is    A NATIONAL BANK                              organized and existing under the laws of
. Lender's address is  3010 ROYAL BOULEVARD
SOUTH, SUITE 230, ALPHARETTA, GEORGIA 30022
(E) "Note" means the promissory note signed by Borrower and dated    SEPTEMBER 25, 2009      .
The Note states that Borrower owes Lender  FOUR HUNDRED SEVENTEEN THOUSAND AND NO/100

Dollars (U.S. $ 417,000.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    OCTOBER 1, 2039        .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider  ☒ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider            LEGAL ATTACHED
                    WAIVER OF BORROWER'S RIGHTS AND CLOSING ATTORNEY

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.01-10/00    52065.15241          Page 1 of 11                              Form 3011



(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L)  "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the          COUNTY                  of      FULTON                                           :
                            [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

APN #: 14F0094LL019
which currently has the address of   2225 WALLACE ROAD SW
                                          [Street]

ATLANTA                     , Georgia  30331      ("Property Address"):
       [City]                          [Zip Code]

      TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.02-10/00    52065.15241                    Page 2 of 11                                Form 3011 1/01





BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note:

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any




Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UIGAMERS.04-10/00      52065.15241                                    Page 4 of 11                              Form 3011





If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.



8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the forgoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:




Deed Book 48403 Pg 681

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand



Deed Book 48403 Pg 682

made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.03-10/00    52085.15241                        Page 8 of 11                        Form 3011 1/01



18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects  Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.09-13/00     52066.15241          Page 9 of 11                            Form 3011  1/01



Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
UICAMERS.10-10/00    52065.15241    Page 10 of 11    Form 3011 1/01





BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ (Seal)
CHARLTON C. LESTER          Borrower

_____
Notary Public

_____ (Seal)
                            Borrower

My Commission Expires: _____

_____ (Seal)
                            Borrower

_____ County

_____ (Seal)
                            Borrower

_____ (Seal)
                            Borrower

_____ (Seal)
                            Borrower

_____(Space Below This Line For Acknowledgment)_____

Deed Book 48403 Pg 686

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS
94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND
BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF
WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF
WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES
51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED
THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107
DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR
HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE
EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING
AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING
CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN;
RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND
EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE
SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN
IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY
ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9,
1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK
73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.



Deed Book **48403** Pg **687**
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

GEORGIA
GRANTOR: CHARLTON C. LESTER

LENDER: CBC NATIONAL BANK
DATE OF SECURITY DEED: SEPTEMBER 25, 2009

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

**READ AND AGREED BY GRANTOR:**

Signed, sealed and delivered
in the presence of

_____(SEAL)
-Grantor　CHARLTON C. LESTER

_____(SEAL)
-Grantor

Notary Public

_____(SEAL)
-Grantor

_____(SEAL)
-Grantor

_____(SEAL)
-Grantor

_____(SEAL)
-Grantor

MARIANNE T. SHAVER
NOTARY
EXPIRES
GEORGIA
March 10, 2012
PUBLIC
DEKALB COUNTY

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the day and year stated above.

_____
Notary Public

_____
Closing Attorney

KAREN R. FERRARA
NOTARY
GEORGIA
Expires above
October 1, 2011
PUBLIC
WALTON COUNTY

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____
CHARLTON C. LESTER

_____

_____

HP490257-10/08　　52065.16241　　　　　　　　　WAIVER OF BORROWER'S RIGHTS (GEORGIA)

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE　BK **48403** PG **687** in this office this 24th day of Feb 20 22.
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk

not valid unless signed in RED ink



Deed Book 63551 Page 529
Filed and Recorded 04/12/2021 02:43:00 PM
2021-0154842
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9578415599
7067927936

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPECIALIZED LOAN SERVICING LLC**, whose address is 6200 S QUEBEC ST, GREENWOOD VILLAGE, CO 80111, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is 888 7TH AVENUE 10TH FLOOR, NEW YORK, NY 10019, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: **9/25/2009**
Original Loan Amount: **$417,000.00**
Executed by (Borrower(s)): **CHARLTON C. LESTER**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book 48403, Page 675
Document/Instrument No: 2009-0285032 in the Recording District of Fulton, GA, Recorded on **9/30/2009.**

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **2225 WALLACE ROAD SW, ATLANTA, GEORGIA 30331**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **3-18-2021**

SPECIALIZED LOAN SERVICING LLC, BY FAY SERVICING, LLC, ITS ATTORNEY-IN-FACT



By: _____
      Daniel Alvarado
Title: _____
            Assistant Secretary

Witness Name: REGINA MCANNCH

Witness Name: Claudia M Andrews



> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
> THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
> TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of ___ **TEXAS**
County of ___ <u>DALLAS</u>

On _____ **3·18·21** _____, before me, **MARY CHAVARRIA**, a Notary Public, personally
appeared _____ <u>Daniel Alvarado</u> _____, **Assistant Secretary** of/for **FAY**
**SERVICING, LLC, AS ATTORNEY-IN-FACT FOR SPECIALIZED LOAN SERVICING LLC, personally**
<u>known to me,</u> or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the
laws of the State of ___ **TEXAS** that the foregoing paragraph is true and correct. I further certify
_____ **Daniel Alvarado** _____ signed, sealed, attested and delivered this document as a voluntary act in my
presence.

Witness my hand and official seal.

*Mary Chavarria*

(Notary Name): _____ **MARY CHAVARRIA**
My commission expires: ___ **3·31·25**

MARY CHAVARRIA
Notary Public, State of Texas
Comm. Expires 03-31-2025
Notary ID 126110395



Deed Book 63551 Page 531
CATHELENE ROBINSON
Clerk of Superior Court

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE_ BK 63551_ PG 529-531 in this office this 24th day of FEB_ 20 22.
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____     Deputy Clerk

not valid unless signed in RED ink



Deed Book 48403 Pg 688
Filed and Recorded Sep-30-2009 02:10pm
2009-0285033
Georgia Intangible Tax Paid $352.50
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

WHEN RECORDED MAIL TO:
RBC Bank (USA)
ATTN: Jan Taylor
P.O. Box 500
Rocky Mount, NC  27802

RETURN TO
Hudnall Cohn Fyvolent & Shaver, P.C.
3471 Donaville Street
Duluth, GA 30096

## SECURITY DEED

**MAXIMUM LIEN.** The lien of this Security Deed shall not exceed at any one time $117,500.00.

**THIS SECURITY DEED** dated September 25, 2009, is made and executed between Charlton C Lester, whose address is 3434 Hamlin Square, Atlanta, GA  30331 (referred to below as "Grantor") and RBC Bank (USA), whose address is Lending Service Center, P.O. Box 1220, Rocky Mount, NC  27802 (referred to below as "Lender").

**GRANT OF SECURITY DEED. FOR AND IN CONSIDERATION** of the financial accommodations by Lender resulting in the obligation which is hereinafter more particularly described, and in order to secure that obligation, Grantor hereby grants, bargains, conveys, transfers, assigns and sells to Lender all of Grantor's right, title, and interest in and to the following described real property: **The Real Property is located in Fulton County, State of Georgia and is described as follows:**

See Exhibit A, which is attached to this Security Deed and made a part of this Security Deed as if fully set forth herein.

**TOGETHER WITH ANY AND ALL** of the following:  (i) all buildings, structures and improvements now or hereafter located on the real property or on any part or parcel thereof and all fixtures affixed or attached, actually or constructively, thereto;  (ii) all and singular the tenements, hereditaments, easements and appurtenances belonging thereunto or in any wise appertaining thereto and the reversion and reversions, remainder or remainders thereof;  (iii) all Rents accruing therefrom, whether now or hereafter due;  (iv) all accounts and contract rights now or hereafter arising in connection with any part or parcel thereof or any buildings, structures or improvements now or hereafter located thereon, including without limitation all accounts and contract rights in and to all leases or undertakings to lease now or hereafter affecting the land or any buildings, structures, or improvements thereon;  (v) all minerals, flowers, crops, trees, timber, shrubbery and other emblements now or hereafter located thereon or thereunder or on or under any part or parcel thereof;  (vi) all estates, rights, title and interest therein, or in any part or parcel thereof;  (vii) all equipment, machinery, apparatus, fittings, fixtures, furniture, furnishings, mobile homes, modular homes and all personal property of every kind or description whatsoever now or hereafter located thereon, or in or on the buildings, structures and improvements thereon, and used in connection with the operation and maintenance thereof, and all additions thereto and replacements thereof; and  (viii) all building materials, supplies, goods and equipment delivered thereto and placed thereon for the purpose of being affixed to or installed or incorporated or otherwise used in the buildings, structures or other improvements now or hereafter located thereon or any part or parcel thereof.

**The Real Property or its address is commonly known as  2225 Wallace Rd SW, Atlanta, GA  30331.**

**REVOLVING LINE OF CREDIT.**  This Security Deed secures the Indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor up to the maximum principal indebtedness of $117,500.00 so long as Grantor complies with all the terms of the Credit Agreement.  Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the Indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement.  It is the intention of Grantor and Lender that this Security Deed secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.  The maturity date of the Credit Agreement is October 10, 2029.  The initial advance under the terms of the Credit Agreement is to be applied toward the purchase of the Property.

**THIS SECURITY DEED, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF EACH OF GRANTOR'S AGREEMENTS AND OBLIGATIONS UNDER THE CREDIT AGREEMENT, THE RELATED DOCUMENTS, AND THIS SECURITY DEED.  IT IS THE INTENTION OF GRANTOR AND LENDER TO CREATE A PERPETUAL OR INDEFINITE SECURITY INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS SECURITY DEED PURSUANT TO O.C.G.A. 44-14-80 AND TO AGREE THAT TITLE SHALL NOT REVERT TO GRANTOR FOR A PERIOD OF SEVEN (7) YEARS FROM THE MATURITY DATE OF THE DEBT OR DEBTS SECURED BY THIS SECURITY DEED.  HOWEVER, NOTHING IN THIS PARAGRAPH WILL IMPAIR LENDER'S RIGHTS TO COLLECTION OF THE INDEBTEDNESS AND FORECLOSURE OF THE SECURITY INTEREST IF THE INDEBTEDNESS IS NOT REPAID WHEN DUE.  THIS SECURITY DEED IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**





## SECURITY DEED
### (Continued)

Page 2

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Security Deed, Grantor shall pay to Lender all amounts secured by this Security Deed as they become due and shall strictly perform all of Grantor's obligations under this Security Deed and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Deed. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Deed or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Security Deed, including the obligation to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Security Deed and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Security Deed.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Security Deed upon the sale or transfer, without Lender's prior written consent, of all or any part of the Property, or any interest in the Property. A "sale or transfer" means the conveyance of Property or any right, title or interest in the Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Property, or by any other method of conveyance of an interest in the Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Georgia law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Security Deed:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work




Deed Book 48403 Pg 690

## SECURITY DEED
### (Continued)

Page 3

done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Security Deed, except for the Existing Indebtedness referred to in this Security Deed or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or, if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Security Deed:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the maximum amount of Grantor's credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Security Deed. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Security Deed, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Security Deed, to the extent compliance with the terms of this Security Deed would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Security Deed for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Security Deed also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.



Deed Book 48403 Pg  691

# SECURITY DEED
## (Continued)

Page 4

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Security Deed:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Security Deed, and (b) Grantor has the full right, power, and authority to execute and deliver this Security Deed to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Security Deed, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Security Deed shall survive the execution and delivery of this Security Deed, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Security Deed:

**Existing Lien.** The security interest arising under this Security Deed securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any security deed, mortgage, deed of trust, or other security agreement which has priority over this Security Deed by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**Assignment of Proceeds.** Grantor hereby transfers and assigns to Lender any and all proceeds, in excess of the amount required to satisfy the Existing Indebtedness, which may be or become payable by reason of foreclosure under the Existing Indebtedness. Grantor further authorizes, directs and instructs that any and all such proceeds be paid directly to Lender and not to Grantor, up to the full extent required to satisfy the Indebtedness, and Grantor hereby releases and relinquishes any and all right, title, interest and claims in and to such proceeds to that extent. The term "foreclosure" as used in this paragraph shall mean or include, without limitation, foreclosure of all or any part of the Property by exercise of any power of sale contained in the Existing Indebtedness, judicial foreclosure, conveyance in lieu of foreclosure, or other means.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Security Deed:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable attorneys' fees and costs and expenses, including court costs that are incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Security Deed:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Security Deed and take whatever other action is requested by Lender to perfect and continue Lender's security interest on the Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Security Deed, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Security Deed.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Security Deed or upon all or any part of the Indebtedness secured by this Security Deed; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Security Deed; (3) a tax on this type of Security Deed chargeable against the Lender or the holder of the Credit Agreement; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Security Deed, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.



Deed Book 48403 Pg  692

## SECURITY DEED
### (Continued)

Page 5

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Security Deed as a security agreement are a part of this Security Deed:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Security Deed in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Security Deed as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Security Deed may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Security Deed.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Security Deed:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Credit Agreement, this Security Deed, and the Related Documents, and (2) the liens and security interests created by this Security Deed on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Security Deed, Lender shall execute and deliver to Grantor a suitable satisfaction of this Security Deed and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Grantor will be in default under this Security Deed if any of the following happen: (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (B) Grantor does not meet the repayment terms of the Credit Agreement. (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without Lender's permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**LENDER'S REMEDIES AND POWER OF SALE.** Upon the occurrence of an Event of Default, Lender shall have the following rights, powers, and remedies:

**Accelerate Indebtedness.** Lender, at Lender's option and election and without notice to Grantor, may declare all or any portion of the Indebtedness to be immediately due and payable, whereupon the same shall be and shall become due and payable forthwith without presentment demand, protest or notice of any kind, all of which are expressly waived by Grantor.

**Entry and Possession.** Lender may enter upon the Property, or any part thereof, and take possession of the Property, excluding therefrom Grantor and all agents, employees and representatives of Grantor; employ a manager of the Property or any part thereof; hold, store, use, operate, manage, control, maintain and lease the Property or any part thereof; conduct business thereon; make all necessary and appropriate repairs, renewals, and replacements; keep the Property insured; and carry out or enter into agreements of any kind with respect to the Property.

**Collection of Rents.** Lender may collect and receive all Rents from the Property and apply the same to the Indebtedness, after deducting therefrom all costs, charges, and expenses of taking, holding, managing, and operating the Property, including the fees and expenses of Lender's attorneys, and agents.

**Payments.** Lender may pay any sum or sums deemed necessary or appropriate by Lender to protect the Property or any part of the Property or Lender's interest in the Property.

**Other Remedies.** Lender may exercise all rights and remedies contained in any Related Document, heretofore, concurrently herewith or in the future executed by Grantor in favor of Lender in connection with the transactions resulting in the Indebtedness or any part thereof.




Deed Book 48403 Pg 693

## SECURITY DEED
### (Continued)

Page 6

**Appointment of Receiver.** Lender may make application to any court and be entitled to the appointment of a receiver to take charge of the Property or any part thereof without alleging or proving, or having any consideration given to, the insolvency of Grantor, the value of the Property as security for the Indebtedness, or any other matter usually incident to the appointment of a receiver.

**UCC Remedies.** With respect to the Personal Property in which a security interest is herein granted, Lender may exercise any or all of the rights accruing to a secured party under this Security Deed, the Uniform Commercial Code (Sections 11-9-101 et. seq. of the Ga. Code Annotated) and any other applicable law. Grantor shall, if Lender requests, assemble all such Personal Property and make it available to Lender at a place or places to be designated by Lender, which shall be reasonably convenient to Grantor and Lender. Any notice required to be given by Lender of a public or private sale, lease or other disposition of the Personal Property or any other intended action by Lender may be delivered personally to Grantor or may be deposited in the United States mail with postage prepaid duly addressed to Grantor at the address of Grantor last known to Lender at least five (5) business days prior to such proposed action, and shall constitute reasonable and fair notice to Grantor of any such action.

**Power of Sale.** Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion, with or without taking possession thereof, at public sale before the courthouse door of the county in which the Property, or any part thereof, is located, to the highest bidder for cash, after first giving notice of the time, place and terms of such sale by advertisement, published once a week for four weeks (without regard for the number of days) in a newspaper in which advertisements of sheriff's sales are published in such county. The advertisement so published shall be notice to Grantor, and Grantor hereby waives all other notices. Lender may bid and purchase at any such sale, and Lender may execute and deliver to the purchaser or purchasers at any such sale a sufficient conveyance of the Property, or the part thereof or interest therein sold. Lender's conveyance may contain recitals as to the occurrence of an Event of Default, under this Security Deed, which recitals shall be presumptive evidence that all preliminary acts prerequisite to such sale and conveyance were in all things duly complied with. The recitals made by Lender shall be binding and conclusive upon Grantor, and the sale and conveyance made by Lender shall divest Grantor of all right, title, interest and equity that Grantor may have had in, to and under the Property, or the part thereof or interest therein sold, and shall vest the same in the purchaser or purchasers at such sale. Lender may hold one or more sales hereunder until the Indebtedness has been satisfied in full. Grantor hereby constitutes and appoints Lender as Grantor's agent and attorney-in-fact to make such sale, to execute and deliver such conveyance and to make such recitals, and Grantor hereby ratifies and confirms all of the acts and doings of Lender as Grantor's agent and attorney-in-fact hereunder. Lender's agency and power as attorney-in-fact hereunder are coupled with an interest, cannot be revoked by insolvency, incompetency, death or otherwise, and shall not be exhausted until the Indebtedness has been satisfied in full. The proceeds of each sale by Lender hereunder shall be applied first to the costs and expenses of the sale and of all proceedings in connection therewith, including attorneys' fees if applicable, then to payment of the Indebtedness, and the remainder, if any, shall be paid to Grantor. If the proceeds of any sale are not sufficient to pay the Indebtedness in full, Lender shall determine, at Lender's option and in Lender's discretion, the portions of the Indebtedness to which the proceeds (after deducting therefrom the costs and expenses of the sale and all proceedings in connection therewith) shall be applied and in what order the proceeds shall be so applied. Grantor covenants and agrees that, in the event of any sale pursuant to the agency and power herein granted, Grantor shall be and become a tenant holding over and shall deliver possession of the Property, or the part thereof or interest therein sold, to the purchaser or purchasers at the sale or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over. All of Lender's rights and remedies will be cumulative and may be exercised alone or together.

**Attorneys' Fees; Expenses.** If any part of the Indebtedness is collected by or with any assistance from or consultation with an attorney at law, Grantor shall pay to Lender as Lender's attorneys' fees, fifteen percent (15%) of such amount collected. Whether or not any court action is involved, and to the extent not prohibited by law, all attorneys' fees and all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Credit Agreement rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Security Deed, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Security Deed. All copies of notices of foreclosure from the holder of any prior security interest which has priority over this Security Deed shall be sent to Lender's address, as shown near the beginning of this Security Deed. Any person may change his or her address for notices under this Security Deed by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**ANTI-MONEY LAUNDERING AND ANTI-TERRORISM.** Grantor represents, warrants and covenants to Bank as follows: (1) Grantor (a) is not and shall not become a person whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (b) does not engage in and shall not engage in any dealings or transactions prohibited by Section 2 of such executive order, and is not and shall not otherwise become associated with any such person in any manner violative of Section 2, (c) is not and shall not become a person on the list of Specially Designated Nationals and Blocked Persons, and (d) is not and shall not become subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control




Deed Book 48403 Pg 694

## SECURITY DEED
### (Continued)

Page 7

regulation or executive order; (2) Grantor is and shall remain in compliance, in all material respects, with (a) the Trading with the Enemy Act, as amended, and each of the foreign assets control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) and any other enabling legislation or executive order relating thereto, and (b) the Uniting And Strengthening America By Providing Appropriate Tools Required To Intercept And Obstruct Terrorism (USA Patriot Act of 2001); and (3) Grantor has not and shall not use all or any part of the proceeds, advances or other amounts or sums constituting or evidenced by the Obligations, directly or indirectly, for any payments to any governmental official or employee, political party, official of a political party, candidate for political office, or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, in violation of the United States Foreign Corrupt Practices Act of 1977, as amended.

**DEED TO SECURE DEBT.** This Security Deed is a "deed to secure debt" made in compliance with O.C.G.A. 44-14-60 et seq. and this conveyance is not a mortgage and shall not be held to be a mortgage. The grant of Grantor's right, title and interest as set forth herein is IN FEE SIMPLE .

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Deed:

**Amendments.** What is written in this Security Deed and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Security Deed. To be effective, any change or amendment to this Security Deed must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Security Deed are for convenience purposes only and are not to be used to interpret or define the provisions of this Security Deed.

**Governing Law.** This Security Deed will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Georgia without regard to its conflicts of law provisions. This Security Deed has been accepted by Lender in the State of Georgia.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Security Deed unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Security Deed. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Security Deed is not valid or should not be enforced, that fact by itself will not mean that the rest of this Security Deed will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Security Deed even if a provision of this Security Deed may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Security Deed with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Security Deed on transfer of Grantor's interest, this Security Deed shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Security Deed and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Security Deed or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Security Deed.

**Waiver of Notice and Hearing and Homestead Exemption.** Grantor expressly waives: (1) any right Grantor may have under the Constitution of the State of Georgia or the Constitution of the United States of America to notice or to a judicial hearing prior to the exercise of any right or remedy provided to Lender by this Security Deed and Grantor waives Grantor's rights, if any, to set aside or invalidate any sale under power duly consummated in accordance with the provisions of this Security Deed on the ground (if such be the case) that the sale was consummated without prior notice or judicial hearing or both; and (2) all homestead exemption rights, if any, which Grantor or Grantor's family may have pursuant to the Constitution and laws of the United States, the State of Georgia or any other State of the United States, in and to the Property as against the collection of the Indebtedness, or any part of the Indebtedness. All waivers by Grantor in this provision have been made voluntarily, intelligently and knowingly by Grantor, after Grantor has been afforded an opportunity to be informed by counsel of Grantor's choice as to possible alternative rights. Grantor's execution of this Security Deed shall be conclusive evidence of the making of such waivers and that such waivers have been voluntarily, intelligently and knowingly made.

**DEFINITIONS.** The following words shall have the following meanings when used in this Security Deed:

**Borrower.** The word "Borrower" means Charlton C Lester and includes all co-signers and co-makers signing the Credit Agreement and all their successors and assigns.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated September 25, 2009, **with credit limit of $117,500.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Credit Agreement is October 10, 2029. NOTICE TO GRANTOR: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund




Deed Book 48403 Pg 695

# SECURITY DEED
## (Continued)

Page 8

Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Security Deed in the events of default section of this Security Deed.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Security Deed.

**Grantor.** The word "Grantor" means Charlton C Lester.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Security Deed, together with any amounts expended to preserve and protect the Property and together with interest on such amounts as provided in this Security Deed.

**Lender.** The word "Lender" means RBC Bank (USA), its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, mobile homes, modular homes, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached, affixed to the Real Property excluding only that property which by operation of law is Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Security Deed less and except the Personal Property.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Security Deed.** The words "Security Deed" mean this Security Deed between Grantor and Lender, and includes without limitation all assignments and security interest provision relating to the Personal Property and the Rents.

IN WITNESS WHEREOF, THIS SECURITY DEED HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS SECURITY DEED IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY DEED IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

X _____
Unofficial Witness

Notary Public, _____

(NOTARY SEAL)

My Commission expires: _____

GRANTOR:

X _____ (Seal)
Charlton C Lester

MARIANNE T. SHAVER
NOTARY PUBLIC
EXPIRES
GEORGIA
March 10, 2012
DEKALB COUNTY



## SECURITY DEED
### (Continued)

Page 9

LASER PRO Lending, Ver. 5.46.00.003   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - GA
C:\LASERPRO\CFI\LPL\G03.FC  TR-133093  PR-54



EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107 DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

This Deed to Secure Debt is made subject to a prior Deed to Secure Debt from **CARLTON C. LESTER** to **CBC NATIONAL BANK** dated **September 26, 2009,** recorded in Deed Book _____ Page _____, FULTON County, Georgia Records; securing an original principal sum of **$417000.00.**

Any default in the performance by Grantor of any of the covenants of said prior Security Deed or Note evidencing the indebtedness secured thereby shall be construed as a default under the terms of this Deed to Secure Debt by reason of which Grantee may declare the entire indebtedness secured hereby due and payable at once.



Deed Book **48403** Pg **698**

**WHEN RECORDED MAIL TO:**
RBC Bank (USA)
ATTN: Jeff Taylor
P.O. Box 500
Rocky Mount, NC 27802

# WAIVER OF GRANTOR'S RIGHTS

**GRANTOR:** Charlton C Lester
**LENDER:** RBC Bank (USA)
**DATE OF SECURITY DEED:** September 25, 2009
**PROPERTY DESCRIPTION:** Located in: Fulton County, State of Georgia and is described as follows:

See Exhibit A, which is attached to this Waiver and made a part of this Waiver as if fully set forth herein.

The Real Property or its address is commonly known as 2225 Wallace Rd SW, Atlanta, GA 30331.

BY EXECUTION OF THIS PARAGRAPH, EACH GRANTOR EXPRESSLY: (A) Acknowledges the right to accelerate the debt and the power of attorney given herein to Lender to sell the property by non-judicial foreclosure upon default by Grantor without any judicial hearing and without any notice other than such notice as is required to be given under the provisions of the Security Deed; (B) Waives any and all rights which each Grantor may have under the Fifth and Fourteenth Amendments to the Constitution of the United States, the various provisions of the Constitution for the several States, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided in the Security Deed; (C) Acknowledges that each Grantor has read the Security Deed and specifically that paragraph relating to the foreclosure provisions, and any and all questions regarding the legal effect of the Security Deed and its provisions have been explained fully to each Grantor and each Grantor has been afforded an opportunity to consult with counsel prior to executing the Security Deed; (D) Acknowledges that all waivers of the aforesaid rights of each Grantor have been made knowingly, intentionally and willingly by each Grantor as part of a bargained for loan transaction; and (E) Agrees that the provisions of this Waiver of Grantor's Rights are incorporated into and made a part of the Security Deed.

IN WITNESS WHEREOF, THIS WAIVER HAS BEEN SIGNED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF. THIS WAIVER IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS WAIVER IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

Signed, Sealed and Delivered in the presence of:

**GRANTOR:**

X _____
Unofficial Witness

X _____ (Seal)
Charlton C Lester

Notary Public, _____ County

(NOTARY SEAL)

My Commission expires: _____

LASER PRO Lending, Ver. 5.46.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - GA C:\LASERPRO\CFI\LPL\G03G\FC^TR-133093 PR-54



**WHEN RECORDED MAIL TO:**
RBC Bank (USA)
ATTN: Jeff Taylor
P.O. Box 500
Rocky Mount, NC 27802

# CLOSING ATTORNEY'S AFFIDAVIT

**GRANTOR:** Charlton C Lester

**LENDER:** RBC Bank (USA)

**DATE OF SECURITY DEED:** September 25, 2009

**PROPERTY DESCRIPTION:** Located in: Fulton County, State of Georgia and is described as follows:

See Exhibit A, which is attached to this Affidavit and made a part of this Affidavit as if fully set forth herein.

The Real Property or its address is commonly known as 2225 Wallace Rd SW, Atlanta, GA 30331.

BEFORE THE UNDERSIGNED ATTESTING OFFICER personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan but prior to the execution of the Security Deed and Waiver of Grantor's Rights by Charlton C Lester ("Grantor"), I reviewed with and explained to Grantor the terms and provisions of the Security Deed and particularly the provisions thereof authorizing Lender to sell the secured Property by a nonjudicial foreclosure under a power of sale, together with the Waiver of Grantor's Rights, and informed Grantor of Grantor's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Grantor of Grantor's rights. After the review with and explanation to Grantor, Grantor executed the Security Deed and Waiver of Grantor's Rights.

Based on the review with and explanation to Grantor, it is my opinion that Grantor knowingly, intentionally and willingly executed the waiver of Grantor's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

IN WITNESS WHEREOF, THIS AFFIDAVIT HAS BEEN SIGNED AND SEALED BY THE UNDERSIGNED, WHO ACKNOWLEDGES A COMPLETED COPY HEREOF.

X_____ (SEAL)
Closing Attorney

SWORN TO AND SUBSCRIBED before me this 25th day of Sept, 2009



Deed Book **48403** Pg   **700**
**Cathelene Robinson**
Clerk of Superior Court
Fulton County, Georgia

### CLOSING ATTORNEY'S AFFIDAVIT
#### (Continued)

**Page 2**

LASER PRO Lending, Ver. 5.46.00.003   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - GA
C:\LASERPRO\CFI\LPL\G03H.FC  TR-133093  PR-54

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE  BK 48403  PG 655 - 705 in this office this 24th day of Feb  2022  CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk

not valid unless signed in RED ink



Deed Book 56794 Pg 615
Filed and Recorded Oct-26-2016 08:30am
2016-0313829
Georgia Intangible Tax Paid $1,207.50
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

This Document Prepared By:
**GREGORY MERRILL**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

When recorded mail to: #:10162673
First American Title ⬛⬛⬛⬛⬛⬛⬛⬛⬛
Loss Mitigation Title Services 1079.12
P.O. Box 27670
Santa Ana, CA 92799
RE: LESTER - PR DOCS

Tax/Parcel #: 14F0094 LL0193
_____ |Space Above This Line for Recording Data| _____

Original Principal Amount: $417,000.00          Investor Loan No.:
Unpaid Principal Amount: $374,375.27
New Principal Amount $402,445.53
Total Cap Amount: $28,070.26

# LOAN MODIFICATION AGREEMENT (SECURITY DEED)

Executed on this day: AUGUST 26, 2016
Borrower ("I"):[1] CHARLTON C LESTER
Borrower Mailing Address: 2225 WALLACE ROAD SW, ATLANTA, GEORGIA 30331
Lender or Servicer ("Lender"): WELLS FARGO BANK, N.A.
Lender or Servicer Address: 3476 STATEVIEW BLVD, MAC# X7801-03K, FORT MILL, SC 29715·
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") SEPTEMBER 25, 2009 and the Note
("Note") date of SEPTEMBER 25, 2009

Property Address ("Property"): 2225 WALLACE ROAD SW, ATLANTA, GEORGIA 30331

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

_____
[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my")
shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Fargo Custom Non HAMP 06102016_368

Page 1



Deed Book 56794 Pg  616

**Prior instrument reference: Recorded on SEPTEMBER 30, 2009 in BOOK 48403  PAGE 675, of the Official Records of FULTON COUNTY, GEORGIA**

This Loan Modification Agreement ("Agreement") is made on AUGUST 26, 2016 by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

If my representations in Section 1, Borrower Representations, continue to be true in all material respects, then this Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **Borrower Representations.**

   I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and/or (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future; I did not intentionally or purposefully default of the Mortgage Loan in order to obtain a loan modification;

   B. Under penalty for perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the modification, are true and correct;

   C. If Lender requires me to obtain credit counseling in connection with the modification, I will do so;

   D. I have made or will make all payments required within this modification process;

   E. In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

2. **The Modification.**





Deed Book 56794 Pg  617

A. The modified principal balance of the Note will include amounts and arrearages that will be past due as of the Modification Effective Date (which may include unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, valuation, property preservation, and other charges not permitted under the terms of this modification, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the modified loan. The new principal balance of my Note will be $402,445.53 (the "New Principal Balance") which includes a previously deferred principal balance in the amount of $0.00. Borrower understands that by agreeing to add the Unpaid Amounts including the prior forbearance to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

B. Interest at the rate of 5.1250% will begin to accrue on the New Principal Balance as of SEPTEMBER 1, 2016 and the first new monthly payment on the New Principal Balance will be due on OCTOBER 1, 2016 Interest due on each monthly payment will be calculated by multiplying the New Principal Balance and the interest rate in effect at the time of calculation and dividing the result by twelve (12). My payment schedule for the modified Loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|--------------------------------|------------------------|-------------------|
| 480    | 5.1250%       | 09/01/2016                | $1,974.01                              | $2,269.55                      | $4,243.56              | 10/01/2016        |

* This includes an escrow shortage amount to be paid over the first 60 month term. After your modification is complete, escrow payments adjust at least annually in accordance with applicable law; therefore, the total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. **Loan Modification Terms.**

This Agreement hereby modifies the following terms of the Loan Documents as described herein above as follows:

A. The current contractual due date has been changed from JANUARY 1, 2016 to OCTOBER 1, 2016. The first modified contractual due date is OCTOBER 1, 2016.

B. The maturity date is SEPTEMBER 1, 2056.

C. The amount of Recoverable Expenses* to be capitalized will be U.S. $705.00.

*Recoverable Expenses may include, but are not limited to: Title, Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/Property Inspections.

Wells Fargo Custom Non HAMP 06102016_368

Page 3



D. Lender will forgive outstanding Other Fees U.S. $0.00. Other Fees may include, but are not limited to: Prior Deferred Interest, appraisal fees.

E. Lender will forgive outstanding NSF Fees U.S. $0.00.

F. Lender agrees to waive all unpaid Late Charges in the amount of U.S. $340.59.

G. The amount of interest to be included (capitalized) will be U.S. $14,390.01.

H. The amount of the Escrow Advance to be capitalized will be U.S. $12,975.25.

4. **Additional Agreements.**

I agree to the following:

A. If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B. If a biweekly loan, the Loan will convert to a monthly payment schedule. References in the Loan Documents to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the interest bearing principal balance by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due. As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

C. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.E. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and Agreement contained in the Loan Documents, as the phrase "covenant and Agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and,



Deed Book 56794 Pg 619

upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.E.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

D.  If the Borrowers balance has been reduced as a result of this new Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with this loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. *Exception:* In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

E.  If this loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

F.  If the Borrower's home owners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

G.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Loan Documents. If Lender exercises this option, Lender shall give Borrower notice of

Wells Fargo Custom Non HAMP 06102016_368



Deed Book **56794** Pg **620**

acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Loan Documents. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Loan Documents without further notice or demand on Borrower.

H. If Borrower has a pay option adjustable rate mortgage Loan. upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for.my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.

I. If Borrower fails to pay Lender the amount due and owing or to pay any monthly payment on the dates above, Borrower shall surrender the Property to Lender. If Borrower fails or refuses to surrender the Property to Lender, Lender may exercise any and all remedies to recover the Property as may be available to Lender pursuant to its security interest and lien and applicable law. These remedies may include the recovery of reasonable attorney's fees actually incurred. plus legal expenses and expenses for entering on the Property to make repairs in any foreclosure action filed to enforce the Lender lien. Lender's rights and remedies extend only to the Property, and any action related to the Property itself and not to recovery of any amount owed to Lender under the Note as modified herein. which has been discharged in bankruptcy.

J. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.

K. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

L. CORRECTION AGREEMENT: The undersigned Borrower(s),· for and in consideration of the approval, closing and funding of this Modification. hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised. the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate. modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified.changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to their heirs, executors. administrators, and assigns of the Borrower.

M. If the Borrower's Loan is currently in foreclosure, the Lender will attempt to suspend or cancel the foreclosure action upon receipt of the first payment according to this Agreement. Lender agrees to ·suspend further collection efforts as long as Borrowers continue making the required payments under this Agreement.

N. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.





O. This Agreement shall supersede the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into with Lender.

P. In cases where the Loan has been registered with Mortgagee who has only legal title to the interests granted by the Borrower in the Loan Documents, Mortgagee has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property and to take any action required of Lender including, but not limited to, releasing and canceling the Loan.

Q. If the Loan Documents govern a home equity loan or line of credit, then Borrower agrees that as of the Modification Effective Date, the right to borrow new funds under the home equity loan or line of credit is terminated. This means that Borrower cannot obtain additional advances and must make payments according to this Agreement. Lender may have previously terminated or suspended the right to obtain additional advances under the home equity loan or line of credit, and if so, Borrower confirms and acknowledges that no additional advances may be obtained.

R. Unless this Agreement is executed without alteration and is signed and returned along with the following documents with the payment, if required, within 15 days from the date of this letter in the enclosed, prepaid overnight envelope, it will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Loan Documents. Upon receipt of a properly executed Agreement, this Agreement will become effective on **SEPTEMBER 1, 2016**.

S. I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/ or subordination Agreement(s).

T. Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement by **SEPTEMBER 10, 2016**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel the modification. If the Borrower returns properly signed modification Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

U. This Agreement modifies an obligation secured by an existing security instrument recorded in **FULTON COUNTY, GEORGIA,** upon which all recordation taxes have been paid. As of the date of this Agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $374,375.27. The principal balance secured by the existing security instrument as a result of this Agreement is $402,445.53, which amount represents the excess of the unpaid principal balance of this original obligation.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**

Wells Fargo Custom Non HAMP 06102016_368





In Witness Whereof, I have executed this Agreement.

Borrower: CHARLTON C LESTER

Date 9-28-16

_____ [Space Below This Line for Acknowledgments] _____

State of Georgia
County of DeKalb ss.

Signed, sealed and delivered on this 28th day of September, 2016 in the presence of:

Unofficial Witness

Notary Public, state of Georgia

Mary M. Cook
Printed Name

March 11, 2018
My Commission Expires

**Document Prepared By**
**GREGORY MERRILL**
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SC 29715**

Wells Fargo Custom Non HAMP 06102016_368

Page 8



Deed Book **56794** Pg **623**

In Witness Whereof, the Lender have executed this Agreement.

**Marcelline Zomatchi**
**Vice President Loan Documentation**

WELLS FARGO BANK, N.A.

*Marcelline Zomatchi*                                      10/12/16
By: (print name)                          (sign)                Date

_(title)_

EG     10/12/16                              10/12/2016
Witness                                       Witness

*Limane Gbengbertane*     *Phan Chris Xiong*
Witness – Printed Name        Witness – Printed Name

_____ [Space Below This Line for Acknowledgments] _____

STATE OF _MINNESOTA_          COUNTY OF _DAKOTA_

The instrument was acknowledged before me this _10-12-16_ by

_MARCELLINE ZOMATCHI_,     the

**Vice President Loan Documentation** of WELLS FARGO BANK, N.A., a company, on

behalf of said company.

Notary Public

Printed Name: ___Isabel Cristina Brown___

My commission expires: _01-31-21_

THIS DOCUMENT WAS PREPARED BY:
GREGORY MERRILL
WELLS FARGO BANK, N.A.
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SC 29715



ISABEL CRISTINA BROWN
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2021



Deed Book 56794 Pg   624

EXHIBIT A

**BORROWER(S):** CHARLTON C LESTER

**LOAN NUMBER:** (scan barcode)

**LEGAL DESCRIPTION:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 94 AND 105 OF
THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND BEING MORE
PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT AN IRON PIN LOCATED ON THE
SOUTHWESTERLY SIDE OF WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST
SIDE OF WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE ROAD, FIFTY-ONE
AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING THENCE SOUTHWESTERLY,
FORMING AN INTERIOR ANGLE OF 88 DEGREES 51 MINUTES WITH THE PRECEDING CALL
A DISTANCE OF THREE HUNDRED THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN
IRON PIN; RUNNING THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107
DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR HUNDRED
TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE EASTERLY LINE OF LAND LOT
105, RUNNING THENCE EASTERLY, FORMING AN INTERIOR ANGLE OF 128 DEGREES 12
MINUTES WITH THE PRECEDING CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530)
FEET TO AN IRON PIN; RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT
AND EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE SOUTHWESTERLY
SIDE OF WALLACE ROAD; RUNNING THENCE NORTHWESTERLY ALONG THE
SOUTHWESTERLY SIDE OF WALLACE ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-
TENTHS (679.9) FEET TO AN IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON
SURVEY ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9, 1961,
PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK 73, PAGE 70,
FULTON COUNTY, GEORGIA RECORDS.

ALSO KNOWN AS: 2225 WALLACE ROAD SW, ATLANTA, GEORGIA 30331



Deed Book 56794 Pg 625
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Date: AUGUST 26, 2016
Loan Number: (scan barcode)
Lender: WELLS FARGO BANK, N.A.

Borrower: CHARLTON C LESTER

Property Address: 2225 WALLACE ROAD SW, ATLANTA, GEORGIA 30331

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

Borrower: _____  Date 9-28-16
CHARLTON C LESTER

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in DE  BK 56794  PG 615-625 in this office this 24th day of Feb  20 22
CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____  Deputy Clerk
not valid unless signed in RED ink



AFTER RECORDING
PLEASE RETURN TO:
CAMPBELL & BRANNON, L.L.C.
ATTORNEYS AT LAW
5565 GLENRIDGE CONNECTOR
SUITE 350
ATLANTA, GA 30342

GR1363DM

Parcel ID: 14F-0094-LL-019-3

After Recording Return To:
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL RD
INDIAN LAND, SC 29707
888-589-4416

Prepared By:
MARGARET MARCINIK
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL ROAD
INDIAN LAND, SC 29707
888-589-4416

Deed Book 65215 Page 619
Filed and Recorded 02/02/2022 09:08:00 AM
2022-0022748
Georgia Intangible Tax Paid $2,241.00
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 1663542869
0848497841

Intangible Tax $2,241.00

_____
[Space Above This Line For Recording Data]

## SECURITY DEED

MADDOX

PIN: 14F-0094-LL-019-3
MIN: 100670800035781467
MERS Phone: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 1, 2022, together with all
Riders to this document.

(B) "Borrower" is HAROLD RUBEN MADDOX, AN UNMARRIED MAN. Borrower is the grantor under
this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is MOVEMENT MORTGAGE, LLC. Lender is a LLC organized and existing under the laws of
DELAWARE. Lender's address is 8024 CALVIN HALL ROAD INDIAN LAND, SC 29707.

(E) "Note" means the promissory note signed by Borrower and dated FEBRUARY 1, 2022. The Note
states that Borrower owes Lender SEVEN HUNDRED FORTY-SEVEN THOUSAND AND 00/100 Dollars
(U.S. $747,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments
and to pay the debt in full not later than MARCH 1, 2052.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX  318.66                                   Page 1 of 15                          Form 3011   1/01





Deed Book 65215 Page 620

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider
☐ Balloon Rider     ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ 1-4 Family Rider     ☒ Other(s) [specify] **GA ACKNOWLEDGEMENT OF BORROWER RIGHTS GA Foreclosure Disclosure CLOSING ATTORNEY'S AFFIDAVIT**

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY of FULTON:
SEE EXHIBIT A LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
which currently has the address of 2225 WALLACE RD SW, ATLANTA, GA 30331-7760 ("Property Address"):

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 318.66     Page 2 of 15     Form 3011 1/01





Nm: MEEYY CertDocCpyJ CFN-DE2022-0022748 ORB-DE BK65215 PG0619 Pgs 1-19 Instr:SD Page :3 of 19
Deed Book 65215 Page 621

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all

GEORGIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

318.66    Page 3 of 15    Form **3011**    1/01





payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due
under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be
applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be
applied first to late charges, second to any other amounts due under this Security Instrument, and then to
reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the
late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from
Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in
full. To the extent that any excess exists after the payment is applied to the full payment of one or more
Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be
applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:
(a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or
encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums
for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any,
or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in
accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any
time during the term of the Loan, Lender may require that Community Association Dues, Fees, and
Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.
Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower
shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds
for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all
Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower
shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of
Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such
payment within such time period as Lender may require. Borrower's obligation to make such payments and
to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this
Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to
pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow
Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be
obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all
Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation,
Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to
apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can
require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable
Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency,
instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in
any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time

**GEORGIA**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
EX 318.66 Page 4 of 15 Form 3011 1/01





specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT






Nbr: MREYY CertDocCopy | CFN DE2022-0028748 ORB DE BK65215 PG0619 (Pgs 1-19) Instr SD Page 6 of 19

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
ЕӠ  318.66                                     Page 6 of 15                                    Form 3011   1/01





otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the

**GEORGIA**–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
☒☒ 318.66 Page 7 of 15 **Form 3011 1/01**





ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any**

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
318.66                                     Page 8 of 15                                     Form 3011    1/01





Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned





Deed Book 65215 Page 628

and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 318.66                                 Page 10 of 15                                 Form 3011   1/01





Deed Book 65215 Page 629

address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as





if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental





Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

GEORGIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 318.66                                    Page 13 of 15                                    Form 3011   1/01





If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.



_____
— BORROWER —  HAROLD  RUBEN  MADDOX

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 318.66                                  Page 14 of 15                                  Form 3011   1/01



Signed, sealed and delivered in the presence of:

_____

Unofficial Witness

_____

Notary Public, ~~FULTON~~ County

AG   DeKalb



_____

[Space Below This Line For Acknowledgment]

_____

Individual Loan Originator: TODD  COSPER, NMLSR ID: 462233
Loan Originator Organization: MOVEMENT  MORTGAGE,  LLC, NMLSR ID: 39179

GEORGIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
EX 318.66                          Page 15 of 15                    Form 3011   1/01





After Recording Return To:
MOVEMENT MORTGAGE, LLC
ATTENTION:
8024 CALVIN HALL RD
INDIAN LAND, SC 29707

Prepared By:
MARGARET MARCINIK
MOVEMENT MORTGAGE, LLC
8024 CALVIN HALL ROAD
INDIAN LAND, SC 29707
888-589-4416

## ACKNOWLEDGMENT OF BORROWER'S RIGHTS

MADDOX

GRANTOR: HAROLD RUBEN MADDOX, AN UNMARRIED MAN

LENDER: MOVEMENT MORTGAGE, LLC

DATE OF SECURITY DEED: FEBRUARY 1, 2022

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (3) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:



— BORROWER — HAROLD RUBEN MADDOX

1009.68                                Page 1 of 2



Signed, sealed and delivered in the presence of:



Unofficial Witness

Notary Public, ~~FULTON~~ County
DeKalb

---

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgment of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgment of Borrower's Rights."



Closing Attorney

Sworn to and subscribed before me on     02/01/2022

Notary Public

My Commission Expires:



EX   1009.68                    Page 2 of 2



# GEORGIA FORECLOSURE DISCLOSURE

## Made Pursuant to Ga. Comp. R. & Regs. r. 80-11-1-.01(9)

MADDOX
MIN: 100670800035781467

Date: **FEBRUARY 1, 2022**

Lender: **MOVEMENT MORTGAGE, LLC**

Borrower(s): **HAROLD RUBEN MADDOX**

Property Address: **2225 WALLACE RD SW**
**ATLANTA, GA 30331-7760**

**O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.**

By signing below, you acknowledge receipt of this Disclosure.

_____ 02/01/2022

– BORROWER – HAROLD RUBEN MADDOX – DATE –

1011.35                          Page 1 of 1





Nrm MREFIY2 OeptDocCpy  CFN DE2022 0022748 ORB DE BK65215 PG0619 /Pgs 1-19 Instr SD Page : 19 of 19

Deed Book 65215 Page 637
CATHELENE ROBINSON
Clerk of Superior Court

**EXHIBIT A**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS
94 AND 105 OF THE 14TH (FF) DISTRICT OF FULTON COUNTY, GEORGIA, AND
BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE SOUTHWESTERLY SIDE OF
WALLACE ROAD AT THE INTERSECTION OF THE SOUTHWEST SIDE OF
WALLACE ROAD AND THE EAST LINE OF LAND LOT 105; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, FIFTY-ONE AND SIX-TENTHS (51.6) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHWESTERLY, FORMING AN INTERIOR ANGLE OF 88 DEGREES
51 MINUTES WITH THE PRECEDING CALL A DISTANCE OF THREE HUNDRED
THIRTY-EIGHT AND ONE-TENTH (338.1) FEET TO AN IRON PIN; RUNNING
THENCE SOUTHEASTERLY, FORMING AN INTERIOR ANGLE OF 107
DEGREES 24 MINUTES WITH THE PRECEDING CALL A DISTANCE OF FOUR
HUNDRED TWENTY-SIX (426) FEET TO AN IRON PIN LOCATED ON THE
EASTERLY LINE OF LAND LOT 105, RUNNING THENCE EASTERLY, FORMING
AN INTERIOR ANGLE OF 128 DEGREES 12 MINUTES WITH THE PRECEDING
CALL, A DISTANCE OF FIVE HUNDRED THIRTY (530) FEET TO AN IRON PIN;
RUNNING THENCE NORTHERLY, ONE HUNDRED EIGHTY-EIGHT AND
EIGHT-TENTHS (188.8) FEET TO AN IRON PIN; LOCATED ON THE
SOUTHWESTERLY SIDE OF WALLACE ROAD; RUNNING THENCE
NORTHWESTERLY ALONG THE SOUTHWESTERLY SIDE OF WALLACE
ROAD, SIX HUNDRED SEVENTY-NINE AND NINE-TENTHS (679.9) FEET TO AN
IRON PIN AND THE POINT OF BEGINNING, AS SHOWN ON SURVEY
ENTITLED PROPERTY OF MRS. GUSSIE TRAW RENEGER, DATED AUGUST 9,
1961, PREPARED BY C.E. RUPPE, ENGINEER, AND RECORDED IN PLAT BOOK
73, PAGE 70, FULTON COUNTY, GEORGIA RECORDS.

Legal Description

I hereby certify the within and foregoing to be a true, correct and complete copy of the
original that appears in  OI  BK  5315 PG  537  in this office this 15 day of Feb  20 22
CATHELENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk
not valid unless signed in RED ink



# WRIT OF FIERI FACIAS
## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA

**CIVIL ACTION NUMBER**   2011CV205919

**JUDGMENT DATE**   04/03/2017

**Plaintiff's Attorney – Name, Address & Telephone**

**Name:** Scott F. Bertschi

**Address:** Clyde & Co US LLP

271 17th Street NW

Suite 1720

Atlanta, GA 30363

**Telephone & Area Code** 404-410-3171

Fi. Fa. In Hands of:_____

_____

### LOUIS R. COHAN and WEINSTOCK & SCAVO, P.C..

Plaintiff(s)

VS.

### CHARLTON CARLOS LESTER

Defendant(s)

To all and singular the sheriffs of the State and their lawful deputies:

In the above styled case, and on the judgment date set out, the plaintiff(s) named above, judgment in the following sums:

| | | |
|---|---|---|
| Principal | $ | 62,317.87 |
| Interest | $ | |
| Late Fees | $ | |
| Attorney Fees | $ | |
| Court Cost | $ | |
| Totals | $ | |

NOTE:_____

_____

with future interest upon said principal amount from the date of the judgment at the legal rate.

### CANCELLATION

The within and forgoing Fi Fa. Having been paid in full the Clerk of Superior Court is hereby directed to cancel it of this _____ day of _____ 20 _____

Signature: _____

Title: _____

Therefore, **YOU ARE COMMANDED,** that of the goods and chattels, land and tenements of said defendant(s). and ESPECIALLY/ONLY of the following described property, to wit:

YOU cause to be made the several sums set out in the forgoing recital of the judgment in this cause and have the said several sums of money before the Superior Court of this County at the next term of court, with this Writ to render to said plaintiff(s), interest, attorney fees and costs aforesaid.

Witness the Honorable ____ Christopher S. Brasher _____ Judge of Said Court, this the 14th _____ day of June, 2016.

Cathelene Robinson, Clerk of Superior Court

By: _____

Deputy Clerk

Entered on General Execution Docket at

Page _____ this ____ day of _____ 20 __

166-16-689

I hereby certify the within and foregoing to be a true, correct and complete copy of the original that appears in LN BK 3945 PG 281 in this office this 24 day of FEB 20___. CATHLENE ROBINSON Clerk of Superior Court, Fulton County, GA

By _____ Deputy Clerk

not valid unless signed in RED ink

